MORGAN, Justice.
**673 This contract interpretation case concerns the operation of the provisions of a commercial real estate lease, specifically those terms regarding insurance and liability, when a lessee seeks damages allegedly caused by the lessor's negligence. The specific question before this Court is whether the pertinent provisions of the lease at issue serve as a complete bar to plaintiff lessees' negligence-based *362 claims against some or all of the named defendants, one of which is the lessor. The language of the lease arrangements indicates the clear intent of the parties to discharge each other from all claims and liabilities for damages resulting from hazards covered by insurance, and it is undisputed that the damages claimed by plaintiff lessees resulted from a hazard that was subject to their insurance coverage. Having elected to enter into the lease at issue here, plaintiff lessees are bound by the explicit terms of the contract and therefore are barred from bringing their claims against other **674 parties to whom the lease applies. Accordingly, we reverse the portion of the decision of the Court of Appeals holding that a critical paragraph in the lease is ambiguous and that, as a result, interpretation of the contract was a matter for a jury to resolve. We remand this matter for further proceedings as described below.
Factual and Procedural Background
Beginning in early 2011, defendant Hardin Creek, Inc. (Hardin Creek), a North Carolina company, began leasing commercial premises in Boone to plaintiff The Pasta Wench, Inc., a specialty pasta manufacturing and distribution business owned and operated by plaintiffs Andrea Morrell and her husband, G. Pony Boy Morrell (G. Morrell). The initial lease, dated 2 February 2011, covered the time period from February 2011 through February 2014, and defined "Landlord" as "Hardin Creek, Inc." and "Tenant" as "Andrea Morrell and G. Morrell (D.B.A.) The Pasta Wench, Inc." Defendant John Sidney Greene (S. Greene) signed the lease as President of Hardin Creek, and both Andrea and G. Morrell signed on behalf of themselves and The Pasta Wench. No other parties or third-party beneficiaries were named in or signed the lease.
The lease was a standard form lease prepared by Hardin Creek, and it included, inter alia , several provisions regarding insurance and liability. Relevant to the parties' arguments in this case are portions of two paragraphs. Paragraph 5, titled "Alterations," discusses The Pasta Wench's right, as "Tenant," to alter or remodel the premises to suit its needs and further states in pertinent part:
**692 (b) Tenant's Neglect. Subject to the provisions set forth in the following sentence, Tenant shall pay for the cost of any repairs or damage resulting from the negligence or the wrongful acts of his employees, representatives or visitors. However, and notwithstanding any other provision of this lease to the contrary, Landlord and Tenant and all parties claiming under them agree and discharge each other from all claims and liabilities arising from or caused by any hazard covered by insurance on the leased premises, or covered by insurance in connection with the property owned or activities conducted on the leased premises, regardless of the cause of the damage or loss, provided that such cause does not prevent payment of insurance proceeds to Landlord under the provisions of the applicable policy.
Paragraph 8, titled "Insurance," provides in its entirety:
**675 Tenant shall maintain insurance in accordance with the provisions of sub[-]paragraphs (a) and (b) of this paragraph, and Tenant shall indemnify Landlord in accordance with the provisions of sub-paragraph (c).
(a) Property Insurance: Tenant shall hold Landlord harmless for loss or damage by fire with regard to all of Tenant's furniture, fixtures, and equipment about or within the leased premises.
(b) Liability Insurance: Tenant shall provide and keep in force for the protection of the general public and Landlord liability insurance against claims for bodily injury or death upon or near the leased premises and the sidewalks, streets and service and parking areas adjacent thereto to the extent of not less than $500,000.00 in respect to bodily injur[i]es or death to any one person and the extent of not less than $500,000.00 for bodily injuries or death to any number of persons arising out of one accident or disaster, and property damage with limits of not less than $100,000.00. The Tenant shall furnish Landlord with satisfactory evidence of such insurance within *363 thirty (30) days of execution of this lease.
Despite the reference in the first sentence of Paragraph 8 to "sub-paragraph (c)," there is no subparagraph (c) in Paragraph 8.
In early 2012 an inspection by the North Carolina Department of Agriculture and Consumer Services (NCDA&CS) revealed the need for modifications to the interior layout of the premises to comply with pertinent state regulations governing The Pasta Wench's food production activities. Specifically, the inspection noted the need for the addition of an enclosed ceiling for the "open" kitchen that was being used by lessees Andrea and G. Morrell in their business. Lessees discussed the NCDA&CS requirements with S. Greene and his son, John Ellis Greene (E. Greene). Both S. and E. Greene are licensed general contractors, with the two of them having different business connections to the leased premises. E. Greene owned the building containing the premises that plaintiffs leased, as well as the real property on which the building sits. In addition to owning lessor Hardin Creek, S. Greene also owned and operated defendant Timberframe and Millwork, Inc. (Timberframe), a construction company in the business of building and remodeling residential and commercial buildings.
**676 After learning of the applicable regulatory requirements, Hardin Creek agreed to undertake the kitchen ceiling enclosure project in exchange for the Morrells' promise to extend the term of the lease from February 2014 through December 2018. An "Amending Agreement" attached to the 2011 lease also imposed a series of rent increases, the first of which went into effect on 1 June 2012. However, the Amending Agreement specifically provided that "[a]ll other terms and conditions from the original lease ... will stay in effect." The parties do not dispute that the insurance and liability-related provisions of the 2011 lease quoted and discussed herein therefore remained in operation at all times relevant to this case.
The kitchen ceiling enclosure project was completed, but in their respective pleadings and depositions in the present case, the parties dispute who performed and supervised the renovation work. S. Greene denied that either he or Timberframe was involved and claimed that the Morrells themselves had supervised the project as the lessees. But, Adam Voss, an employee of Timberframe, testified that he performed the work while employed and being paid by Timberframe and at the direction of S. Greene. Voss also testified that all work on the ceiling project was conducted under the supervision of S. Greene and Timberframe alone. G. Morrell likewise testified that S. Greene had supervised and completed the project using Timberframe personnel.
The kitchen ceiling enclosure project was later discovered to have violated both general building codes and mechanical codes for fire sprinkler systems. The flawed nature of the work to enclose the ceiling of the kitchen was discovered after the mountain municipality of Boone experienced extremely low temperatures in January 2014, causing the fire sprinkler pipes on the leased premises to burst, to flood the Morrells' leased business space, and to destroy the lessees' inventory, ingredients, and specialty equipment. As the lessees, the Morrells claimed that these losses prevented The Pasta Wench from filling pending orders and that they halted new sales. Although the lessees had obtained insurance on the premises that covered the hazard of flooding, nevertheless the benefit limits of the policy that they purchased were insufficient to cover their alleged losses such that The Pasta Wench went out of business.
On 3 December 2014, plaintiff lessees filed an action in Superior Court, Watauga County, alleging negligence and breach of the duty of workmanlike performance against Hardin Creek, S. Greene, and Timberframe; constructive eviction and breach of contract against Hardin Creek; and unfair trade practices against S. Greene and Hardin **677 Creek. In their complaint, plaintiffs asserted that, after the flooding, they discovered acts and omissions attributable to Hardin Creek, Timberframe, and S. Greene which plaintiffs claim caused, or contributed to, the frozen pipes in the sprinkler system. These allegedly negligent acts and omissions included leaving a vent open near the roof so as to allow the entry of cold air, and establishing a thermal *364 barrier between the newly enclosed kitchen and the open area above it, so as to render the thermostat ineffective for regulating the temperature above the kitchen ceiling where the fire sprinkler system pipes were located.
On 2 March 2015, defendants Hardin Creek, S. Greene, and Timberframe (the original defendants) filed an answer. Along with general denials and admissions, the answer averred that "plaintiffs and defendant Hardin Creek" were the only parties to the lease and that "the other two defendants [S. Greene and Timberframe] did not provide any services to plaintiffs in their (i.e., defendants') names." The original defendants also raised four affirmative defenses: plaintiffs' contributory negligence, assumption of risk, failure to mitigate damages, and the economic loss doctrine. Hardin Creek also reserved its "right to assert other affirmative defenses that become known through discovery." The original defendants also moved to dismiss plaintiffs' negligence, breach of warranty, and unfair and deceptive trade practices claims pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). On 8 March 2016, Hardin Creek amended the answer and added two counterclaims, one alleging that plaintiffs had breached their duty to maintain the premises and the other contending that plaintiffs had violated the terms of the lease. Hardin Creek sought monetary damages for these counterclaims.
On 14 April 2016, the original defendants moved for summary judgment contending, inter alia , that plaintiffs' claims against S. Greene and Timberframe must be dismissed because they were not parties to the lease and any work that was performed by Timberframe was on Hardin Creek's behalf. In addition, the original defendants asserted that the lease discharged Hardin Creek "from all claims and liabilities arising from or caused by any hazard covered by insurance ... regardless of the cause of the damage or loss" pursuant to Paragraph 5(b) of the lease. On the next day, plaintiffs moved to amend their complaint to add E. Greene as a party defendant, alleging negligence and breach of the implied warranty of workmanlike performance. On the same date, plaintiffs filed a motion to continue and to extend the previously determined scheduling deadlines. On 22 April 2016, plaintiffs filed a third-party complaint against E. Greene, bringing all claims alleged in their complaint against him.
**678 On 25 April 2016, the Honorable William Coward heard arguments on all parties' motions. On 27 April 2016, the trial court granted summary judgment in favor of defendants and dismissed the complaint with prejudice. The trial court found that: (1) plaintiffs "presented no plausible reasons why further discovery would shed any light on [P]aragraph 5(b) in the Lease," and (2) "[P]aragraph 5(b) in the lease is not ambiguous and is a complete defense to the claims raised in the Complaint." The trial court sua sponte granted summary judgment in favor of plaintiffs on Hardin Creek's counterclaims. Finally, the trial court dismissed with prejudice plaintiffs' third-party complaint against E. Greene and dismissed as moot plaintiffs' motion to amend complaint and motion to continue. Plaintiffs filed their notice of appeal to the Court of Appeals on 20 May 2016.
At the Court of Appeals, plaintiffs argued that the trial court erred in granting summary judgment in favor of defendants. Specifically, plaintiffs contended that the language of Paragraph 5(b) of the lease-that the parties "discharge[d] each other from all claims and liabilities arising from or caused by any hazard covered by insurance ... regardless of the cause of the damage or loss, provided that such cause does not prevent payment of insurance proceeds to Landlord under the provisions of the applicable policy"-was ambiguous in that it did not clearly reflect the intent of the parties to bar negligence claims against each other. A majority of the Court of Appeals panel agreed with plaintiffs, concluding that the trial court's summary judgment ruling was erroneous. Morrell v. Hardin Creek, Inc. , --- N.C. App. ----, 803 S.E.2d 668, 675 (2017). In reaching that result, the majority opined that the references in Paragraph 5(b) to "any hazard covered by insurance" and "payment of insurance proceeds" require that this provision be read in conjunction with Paragraph 8 of the lease, which
purports to define the type and amount of insurance [d]efendants required [p]laintiffs *365 to carry. Paragraph 8 also includes the terms under which [p]laintiffs would indemnify [d]efendants for damages covered by insurance. However, Paragraph 8 is incomplete. The opening sentence of Paragraph 8 states "Tenant shall maintain insurance in accordance with the provisions of subparagraphs (a) and (b) of this paragraph, and Tenant shall indemnify Landlord in accordance with the provisions of sub-paragraph (c)." The text of subparagraphs (a) and (b) follow this sentence. Subparagraph 8(a), titled "Property Insurance," contains indemnification language and states [p]laintiffs hold Hardin **679 Creek harmless for damages or losses caused by fire to [p]laintiffs' furniture, fixtures, and equipment. Subparagraph 8(b), titled "Liability Insurance," defines the types and amounts of liability insurance [d]efendants required [p]laintiffs to carry. There is not a Subparagraph 8(c).
Both [P]aragraph 5(b) and Paragraph 8 refer to limits on Hardin Creek's liability under the lease. The incomplete construction of Paragraph 8 creates an ambiguity as to the type and amount of insurance Hardin Creek required of [p]laintiffs. The incomplete construction of Paragraph 8 also creates an ambiguity relating to the scope of [P]aragraph 5(b). The language the trial court relied on in [P]aragraph 5(b) refers to any "hazard covered by insurance on the leased premises." However, when [P]aragraph 5(b) is read in connection with Paragraph 8, the exact meaning of the term "covered by insurance" is ambiguous. It is unclear whether that term refers to hazards covered only by insurance coverage as required by the lease, or whether that term is modified by the language in the missing subparagraph on indemnification.
Id. at ----, 803 S.E.2d at 674. The majority went on to observe that, even if the lease was unambiguous as to indemnification, the majority still would have concluded that Paragraph 5(b) did not serve as a bar against claims arising out of negligence because a "contract will never be so interpreted [to exempt liability for negligence] in the absence of clear and explicit words that such was the intent of the parties." Id. at ----, 803 S.E.2d at 674 (alteration in original) (quoting Winkler v. Appalachian Amusement Co. , 238 N.C. 589, 596, 79 S.E.2d 185, 190 (1953) ). Based upon its own cases applying this reasoning, the Court of Appeals reversed the trial court's entry of summary judgment in favor of all defendants and remanded the matter for further proceedings. Id. at ----, 803 S.E.2d at 674-76. The court further determined that it could not "review or resolve the issue of the various [d]efendants' degree of involvement in modifying the sprinkler system from our record on appeal" and added that "[t]his is an issue for the trial court which the trial court may be able to resolve upon motion for directed verdict." Id. at ----, 803 S.E.2d at 675-76. On remand, the trial court was also directed to "resolve and reconsider [p]laintiffs' motion to add E. Greene as [ ] a defendant to this action" because the trial court's denial of that motion in the first instance was a consequence of its order granting summary judgment in defendants' favor. Id. at ----, 803 S.E.2d at 676.
**680 The dissenting judge would have held that the trial court's grant of summary judgment in favor of defendants was proper, based on his conclusion that Paragraph 5(b) "is unambiguous and operates as a complete defense to [all] claims raised by [p]laintiffs." Id. at ----, 803 S.E.2d at 676 (Berger, J., dissenting). Quoting Gibbs v. Carolina Power & Light Co. , 265 N.C. 459, 467, 144 S.E.2d 393, 400 (1965), for the proposition that "when the language of the contract and the intent of the parties are clearly exculpatory, the contract will be upheld," the dissenting judge found that the language in Paragraph 5(b)-"notwithstanding any other provision of this lease to the contrary, Landlord and Tenant ... agree and discharge each other from all claims and liabilities arising from or caused by any hazard covered by insurance ..., regardless of the cause of the damage or loss"-showed that "the parties clearly and explicitly waived all claims, including claims for negligence." Id. at ----, 803 S.E.2d at 676-78. In addition, rather than finding ambiguity in the terms of Paragraph 8 regarding the parties' intent to waive negligence claims against each other, the dissenting judge determined *366 that "[i]ncluding an insurance requirement is evidence of the parties' intent to relieve the other from any liability or damages, including damages related to negligence." Id. at ----, 803 S.E.2d at 679.
On 20 September 2017, defendants filed a notice of appeal based upon the dissent in the Court of Appeals. They also filed a petition for discretionary review of additional issues, which this Court allowed on 1 November 2017. Morrell v. Hardin Creek, Inc. , 370 N.C. 282, 805 S.E.2d 695 (2017).
Standard of Review
Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2017). A ruling on a motion for summary judgment must consider the evidence in the light most favorable to the non-movant, drawing all inferences in the non-movant's favor. Dobson v. Harris , 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (citations omitted). The standard of review of an appeal from summary judgment is de novo. In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted). Likewise, whether the language of a contract is ambiguous is a question of law to be reviewed de novo. See Bicket v. McLean Secs., Inc. , 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996) (citations omitted).
**681 Analysis
A. Claims Against Hardin Creek
"Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Philip Morris USA Inc. , 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005) (citing Lane v. Scarborough , 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973) ). "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." Gould Morris Elec. Co. v. Atl. Fire Ins. Co. , 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948) (citation omitted). Although parties may generally contract "to bind themselves as they see fit," "contracts exempting persons from liability for negligence are not favored by the law, and are strictly construed against those relying thereon." Hall v. Sinclair Ref. Co. , 242 N.C. 707, 709, 89 S.E.2d 396, 397-98 (1955). For this reason, exculpatory clauses will not be "construed as to exempt the indemnitee from liability for his own negligence or the negligence of his employees in the absence of explicit language clearly indicating that such was the intent of the parties." Hill v. Carolina Freight Carriers Corp. , 235 N.C. 705, 710, 71 S.E.2d 133, 137 (1952). Thus, even when the issue before a court is whether an agreement exempts a party thereto from liability for its own negligence, the central question remains the same as in any contract interpretation case: what did the parties intend? "[W]hen the language of the contract and the intent of the parties are clearly exculpatory, the contract will be upheld." Gibbs , 265 N.C. at 467, 144 S.E.2d at 400.
As previously noted, the cases relied upon by the majority below are decisions of the Court of Appeals- William F. Freeman, Inc. v. Alderman Photo Co. , 89 N.C. App. 73, 365 S.E.2d 183 (1988), and Lexington Insurance Co. v. Tires Into Recycled Energy & Supplies, Inc. , 136 N.C. App. 223, 522 S.E.2d 798 (1999), disc. rev. denied , 351 N.C. 642, 543 S.E.2d 872 (2000) -that in turn were based upon this Court's decision in Winkler . We stated in Winkler that "[c]ontracts for exemption from liability for negligence are not favored by the law, and are strictly construed against the party asserting it. The contract will never be so interpreted in the absence of clear and explicit words that such was the intent of the parties ." Winkler , 238 N.C. at 596, 79 S.E.2d at 190 (emphasis added) (citation omitted). A close examination of the facts in Winkler is useful in understanding why the Court of Appeals erred in finding that the lease in the instant case was ambiguous regarding the parties' intent to exempt each other for liability for negligence.
**682 Winkler arose from an action brought by the plaintiff-landlord against his tenant for damages incurred when a theater building *367 burned, allegedly as the result of the defendant-tenant's negligent operation of a popcorn machine. Id. at 589, 79 S.E.2d at 186. In the trial court, the defendant-tenant asserted, inter alia , "that the language of paragraphs 3 and 9 of the lease relieved the defendant from liability for damages by fire, no matter if caused by its own negligence" and the plaintiff-landlord was nonsuited. Id. at 594, 79 S.E.2d at 189. On appeal, just as in the instant case, this Court considered whether two lease provisions were ambiguous regarding the parties' intent as to the allocation of risk from the tenant's negligence:
The first question involved is: Whether the words in the lease in paragraph 9 "the lessees agree that they will, at the expiration of this lease, deliver up and return possession of the premises to the lessors in as good order, repair and condition as at present, ordinary wear and tear excepted, and damage by fire ... excepted," and the words in paragraph 3 "the lessees ... shall, at their own cost and expense, make any and all repairs that may be necessary inside the portion of the building hereby demised, excepting in case of destruction or damage by fire," exempt the defendant from liability for damage by fire caused by its actionable negligence, if there was such actionable negligence on its part.
Id. at 596, 79 S.E.2d at 190-91 (ellipses in original) (emphasis added). This Court noted the "implied obligation on the part of the lessee to use reasonable diligence to treat the premises demised in such manner that no injury be done to the property, but that the estate may revert to the lessor undeteriorated by the willful or negligent act of the lessee," Id. at 594-95, 79 S.E.2d at 189, and then observed:
Similar words [to those in the theatre lease] have been used in leases for many years to relieve the lessee from any liability caused by accidental fires, or fires caused by the wrongful act of another. Did these words mean that the lessee was to be exculpated from a fire which was the result of its own negligence? Such a concession would scarcely be looked for in a contract between business men. If the parties intended such a contract, we would expect them to so state in exact terms. It would be natural for the lessee, who had contracted to keep up repairs, to desire to escape liability for purely accidental fires and for the lessor to be willing to grant that relief, but it would not be natural that the **683 lessor would be willing to release the lessee from damage caused by its own active negligence. In our opinion, the words in paragraphs 9 and 3 of the lease do not exempt the defendant from liability for fire damage, if caused by its actionable negligence.
Id. at 596, 79 S.E.2d at 191. This Court therefore determined that the requirements in paragraphs 3 and 9 that the theatre be returned to the landlord in "good order" and "undeteriorated" other than by ordinary wear and tear, and that the tenant bear the costs of all such needed repairs other than those caused by fire, did not reveal a clear intent to go beyond the typical or "natural" contractual bargain and waive a party's liability for damages caused by that party's own negligence. Id. at 598, 79 S.E.2d at 192.
The Court went on in Winkler to reject the defendant-tenant's contention that another paragraph of the lease providing "that the lessor shall keep the building insured to the extent of its full insurable value[ ] exculpate[d] the defendant from liability for fire damage caused proximately by its negligence." Id. at 597, 79 S.E.2d at 191. While acknowledging that "[u]pon paying a loss by fire, the insurer is entitled to subrogation to the rights of insured against the third person tort-feasor causing the loss, to the extent of the amount paid," the Court opined that the fact "that the insurer is entitled to recoup its loss out of what the defendant owes the plaintiff for having negligently destroyed the insured building is of no legal concern to the defendant." Id. at 597-98, 79 S.E.2d at 191-92. Accordingly, the Court concluded that "the language in the [theatre] lease does not expressly or impliedly exempt the defendant from liability for any damage by fire to the demised premises caused proximately by its negligence." Id. at 598, 79 S.E.2d at 192.
The language in Paragraph 5(b) in the case at bar cited as exculpatory by defendants *368 and in the Court of Appeals dissent is readily distinguishable from the provisions in Winkler that were deemed to lack a clear demonstration of the parties' intent to indemnify each other for negligence. Rather than merely referring to the tenant's duty to return the premises in "good order" and to "make any and all repairs," the lease here explicitly exempted the parties "from all claims and liabilities arising from or caused by any hazard covered by insurance on the leased premises ... regardless of the cause of the damage or loss ." (Emphasis added). Indeed, plaintiffs acknowledge that "this language is broad and expansive enough to encompass a wide range of claims against Hardin Creek," while asserting that "it is that very breadth that **684 makes the clause unable to satisfy the exacting standard under North Carolina law for relieving Hardin Creek from liability for its own negligence." Plaintiffs' chameleonic construction of this contractual language is unworkable. Given the "broad and expansive" nature of the phrase "all claims and liabilities ... regardless of the cause of the damage or loss," it is a challenging exercise to conjure up language in an exculpatory clause that would meet plaintiffs' implied standard for unambiguity regarding waiver of negligence-based claims other than to require such a waiver to explicitly mention the term "negligence." Neither Winkler nor any other precedent from this Court, however, requires that a contract expressly include the term "negligence" in order for an exculpatory clause to be enforced in the context of negligence claims. Instead, such provisions must simply contain "clear and explicit words that such was the intent of the parties." Winkler , 238 N.C. at 596, 79 S.E.2d at 190 (citation omitted). Here the phrase "from all claims and liabilities arising from or caused by any hazard covered by insurance on the leased premises ... regardless of the cause of the damage or loss" is explicitly and effectively exculpatory as to "all claims," including those grounded in tort and caused by Hardin Creek's alleged negligence, which result from a "hazard covered by insurance ... regardless of the cause of the damage or loss." (Emphasis added).
Plaintiffs argue that the language in Paragraph 5(b) cannot be read to obligate them to indemnify Hardin Creek from liability for claims for business losses-not covered by insurance-arising from Hardin Creek's negligence or other misconduct. Plaintiffs misapprehend the lease provision. A plain reading of Paragraph 5(b) reveals that the only limit on the scope of the exculpatory clause is not the type of losses suffered, but the type of hazard that caused those losses. If the hazard that caused plaintiffs' alleged damages was covered by insurance-and it is undisputed that the hazard of flooding that caused plaintiffs' alleged damages was covered by insurance-then plaintiffs are barred from bringing an action against Hardin Creek for "all claims and liabilities" caused thereby, including "business losses."
The dissent views the language at issue in Paragraph 5(b) of the lease in such a manner so as to gratuitously equate plaintiffs' interpretation of said language with defendants' construction of this provision. In examining this disputed language and evaluating the parties' respective positions concerning it, the dissent concludes that "each provides a plausible interpretation of the plain language." Based on the faulty premise that plaintiffs' version of the legal effect of the contested language in Paragraph 5(b) substantively establishes an ambiguity in the **685 provision's terminology, the dissent thereupon conveniently applies well-established rules of contract interpretation pertaining to ambiguities and resorts to consultation of other provisions of the lease in an effort to cultivate an ambiguity which was not planted in the contract. This approach is further exacerbated by the dissent's resolve to both stretch and invert this Court's reasoning in Winkler in an attempt to rationalize the applicability of such reasoning to the parties in the instant case, even though they occupy diametrically opposite positions from the parties in Winkler . Due to an initial erroneous supposition that plaintiffs' depiction of Paragraph 5(b)'s language at issue as ambiguous is meritorious, coupled with a misplaced reliance on the applicability of N.C.G.S. § 22B-1 's public policy declarations which do not apply to a building outside of a contract "relative to the design, planning, construction, alteration, repair or maintenance," the *369 dissent's resulting analyses are misoriented and the ultimate conclusions are unwarranted.
We likewise reject plaintiffs' contention that the above-quoted portion of Paragraph 5(b) is a waiver of subrogation clause that must be interpreted in context with the other provisions of the lease respecting insurance and not be enforced beyond the scope of the specific context in which it appears. In plaintiffs' view, this Court must look to the terms of Paragraph 8, which covers insurance requirements under the lease, to understand the parties' intent in Paragraph 5(b). Paragraph 8 required plaintiffs to maintain property insurance to "hold Landlord harmless for loss or damage by fire" and to maintain liability insurance to protect "the general public and Landlord ... against claims for bodily injury or death." Plaintiffs suggest that those requirements delimit the reference to "any hazard covered by insurance on the leased premises" in Paragraph 5(b), and as a result, Paragraph 8 would not require plaintiffs to maintain property insurance for flood damage or for property damage greater than $100,000.00, and the exculpatory language in Paragraph 5(b) cannot apply to claims arising from those hazards. In effect, plaintiffs ask this Court to read into Paragraph 5(b) the equivalent of the following bracketed language:
Landlord and Tenant and all parties claiming under them agree and discharge each other from all claims and liabilities [other than negligence and intentional torts] arising from or caused by any hazard covered by insurance [as specifically required under the terms of Paragraph 8 of this lease] on the leased premises, or covered by insurance [as specifically required under the terms of Paragraph 8 of this lease] in connection with the property owned or activities **686 conducted on the leased premises, regardless of the cause of the damage or loss [excepting intentional or negligent acts of the Landlord], provided that such cause does not prevent payment of insurance proceeds to Landlord under the provisions of the applicable policy[; and with the proviso that the minimum policy limits of the insurance required in Paragraph 8 shall serve as the limits on the liability for claims brought pertinent to this provision].
The parties here could have entered into such an agreement that included the imagined terms bracketed above, which plaintiffs intimate should be inferred in construing Paragraph 5(b), but the parties did not do so. This Court cannot creatively interpret the parties' actual lease agreement in the manner urged by plaintiffs, and must instead enforce the parties' intent as evidenced by the clear and explicit language of the lease. See Dawes v. Nash County , 357 N.C. 442, 449, 584 S.E.2d 760, 764 (2003) (stating that "courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein" (quoting Woods v. Nationwide Mut. Ins. Co. , 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978) ) ). The lease executed by plaintiffs and Hardin Creek unequivocally demonstrates the parties' intent to hold each other harmless regarding all liability for damage and loss arising from hazards covered by the insurance obtained for the premises. The parties do not dispute that the flooding of plaintiffs' leased premises was a hazard covered by insurance on the premises. Plaintiffs' complaint does not allege that the acts or omissions of any defendant prevented payment of insurance proceeds that became due as the result of covered hazards, although the complaint alleges that plaintiffs' damages exceeded their insurance policy limits. The trial court was correct in finding that Paragraph 5(b) is unambiguous and functions as a complete defense to plaintiffs' claims lodged against Hardin Creek, the only defendant that was undisputedly a party to the contract. Accordingly, we reverse the decision of the Court of Appeals with regard to all of plaintiffs' claims with regard to Hardin Creek and find that the trial court properly granted summary judgment in favor of Hardin Creek.
B. Claims Against S. Greene, Timberframe, and E. Greene
The trial court granted summary judgment in favor of defendants S. Greene and Timberframe *370 and also dismissed plaintiffs' third-party complaint against E. Greene with prejudice. The dissent below did not address these issues, but the Court of Appeals majority determined that the case should be remanded to the trial court to reconsider both **687 matters. We agree with the lower appellate court's approach regarding these claims, in light of the insufficiency of the record to allow this Court to fully assess the correctness of the trial court's allowance of the dispositive motions of defendants S. Greene, Timberframe, and E. Greene.
Although we reverse the Court of Appeals in its erroneous analysis of the lease, we agree that the record is not sufficiently developed for our consideration of the involvement of Timberframe and the individual defendants regarding modifications to the premises. Therefore, we remand these matters to the trial court for reconsideration of the remaining claims.
C. Hardin Creek's Counterclaims
As previously noted, Hardin Creek's counterclaims for negligence and breach of contract were dismissed sua sponte by the trial court pursuant to N.C.G.S. § 1A-1, Rule 56(c). At the time that the trial court dismissed these counterclaims, no discovery had been conducted with respect to them, and they were not argued by the parties at the hearing on defendants' summary judgment motion. Under these circumstances, Hardin Creek contends that the basis for the trial court's dismissal of said counterclaims could only have been that the exculpatory clause, applying equally to Hardin Creek and to plaintiffs, concomitantly provided a complete defense to plaintiffs' claims and Hardin Creek's counterclaims. We agree that this is the only reasonable interpretation of the trial court's order, and therefore proceed on this premise.
In the Court of Appeals, Hardin Creek's brief addressed the dismissal of its counterclaims as follows:
Without diminishing the strength of [d]efendants' argument that the Exculpatory Clause is valid and enforceable and bars [p]laintiffs' claims, [d]efendants, in the alternative, ask the [Court of Appeals] to apply the Exculpatory Clause equally to both parties; and if the summary judgment in favor of [d]efendants is reversed, the [c]ourt should reverse the dismissal of the counterclaims.
Plaintiffs characterized this language as only summarily addressing the dismissal of the counterclaims, and the Court of Appeals agreed, opining:
[d]efendants fail to argue this issue and do not present this [c]ourt with a reason to disturb the trial court's order granting summary judgment in favor of [p]laintiffs as to [d]efendants' counterclaims. Defendants have abandoned this issue on appeal, and we consequently affirm the trial court's ruling as to [d]efendants' counterclaims.
**688 Id. at ----, 803 S.E.2d at 676. We believe the Court of Appeals erred in determining that Hardin Creek abandoned this issue on appeal.
Whether the trial court erred in its resolution of Hardin Creek's counterclaims against plaintiffs depended on the same essential issue as did consideration of the trial court's resolution of plaintiffs' claims against Hardin Creek, namely, a determination of the meaning and effect of the exculpatory clause. Accordingly, the same facts, arguments, and authorities were pertinent to this element of the case. A repetition of these facts, arguments, and authorities would have served no useful purpose. Under the specific circumstances presented here, we therefore conclude that Hardin Creek did not abandon its counterclaims issue on appeal and instead sufficiently presented the matter for review.
In light of our determination that the exculpatory clause bars plaintiffs' claims against Hardin Creek, this provision also bars Hardin Creek's counterclaims against plaintiffs. Therefore, although we disavow the reasoning and holding of the Court of Appeals with regard to preservation of the counterclaims issue on appeal, the ultimate result as to the resolution of Hardin Creek's counterclaims remains the same. The trial court's grant of summary judgment in favor of plaintiffs on defendant Hardin Creek's counterclaims is upheld.
*371 Conclusion
We affirm in part, affirm in part as modified, and reverse in part the decision of the Court of Appeals, and we remand this matter to that court for further remand to the trial court. While the summary judgment order is left undisturbed with regard to the claims of plaintiffs against Hardin Creek and Hardin Creek's counterclaims against plaintiffs, on remand the trial court should consider plaintiffs' claims against the other original defendants, plaintiffs' motion to add E. Greene as a defendant, and any discovery motions implicated thereby.
AFFIRMED IN PART; MODIFIED AND AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.