Perry v. Frigi-Temp Frigeration, Inc., 2020 NCBC 62.

STATE OF NORTH CAROLINA

WAKE COUNTY

MONTE L. PERRY,

Plaintiff,

v.

FRIGI-TEMP FRIGERATION, INC.
and JOHN T. ("TIM") GRAY,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 916

**ORDER AND OPINION ON
DEFENDANTS' PARTIAL MOTION
TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT**

1. **THIS MATTER** is before the Court on Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"). (ECF No. 41.)

2. This case arises from Defendant Frigi-Temp Frigeration, Inc.'s ("Frigi-Temp" or the "Company") termination without cause of the Company's then-CEO, Plaintiff Monte L. Perry ("Perry"), shortly before Frigi-Temp's sale to TWC Services, Inc. ("TWC") on January 17, 2020. Perry contends that Frigi-Temp and its President and majority shareholder, Defendant John T. "Tim" Gray ("Gray"), terminated Perry's employment to avoid paying him substantial compensation he was due under his contract with the Company as a result of the sale, including a significant bonus payment. Perry claims through this lawsuit that, among other things, he is entitled to the bonus payment. Defendants ask the Court to dismiss Perry's claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") to the extent those claims seek recovery of the bonus.

3.     Having considered the Amended Complaint, the Motion, the related briefing, and the arguments of counsel at the hearing on the Motion, the Court hereby **GRANTS in part** and **DENIES in part** the Motion.

> *Graebe Hanna & Sullivan, PLLC, by Christopher T. Graebe and J. William Graebe, for Plaintiff Monte L. Perry.*
>
> *Forrest Firm, P.C., by Beth A. Stanfield, Keith E. Richardson, and Andrew R. Jones, for Defendants Frigi-Temp Frigeration, Inc. and John T. ("Tim") Gray.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

4.     The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6). Rather, the Court recites only those facts alleged in the Amended Complaint that are relevant to the Court's determination of the Motion.

5.     Frigi-Temp is a North Carolina corporation involved in the commercial HVAC, refrigeration, and kitchen equipment sales and service business in Wake County, North Carolina and certain nearby counties. (Am. Compl. ¶¶ 2, 5, ECF No. 39.)[1] Gray is the Company's President, director, and majority shareholder. (Am. Compl. ¶ 3.)

6.     Before the events giving rise to this lawsuit, Perry and Gray were friends of longstanding. (Am. Compl. ¶ 6.) Years after their friendship began, they decided to work together. (Am. Compl. ¶ 8.) At Gray's request, Perry served as a part-time

---

[1] Perry filed his Amended Complaint under seal on March 5, 2020, (ECF No. 34), and publicly on March 12, 2020, (ECF No. 39). For purposes of this Order and Opinion, the Court will refer to the redacted, public version.

consultant for Frigi-Temp from April 2017 through early May 2018. (Am. Compl. ¶ 8.) In April 2018, Gray advised Perry that he wanted to increase Perry's role in the Company. (Am. Compl. ¶ 9.)

7. To that end, on May 11, 2018, Gray tendered to Perry for his review the first draft of an agreement titled "Employment/Partnership Agreement." (Am. Compl. ¶ 10; Am. Compl. Ex. 1, ECF No. 39.1.) The document stated, in relevant part, that "Monte [Perry] desires to be protected from a premature sale (less than 5 years from date of agreement). Therefore, Tim [Gray] will give to Monte [Perry] an additional 5% of equity for every year left in contract in the event of a sale prior to March 31, 2018." (Am. Compl. Ex. 1.)[2]

8. Gray and Perry ultimately agreed that Perry would become the Company's Chief Executive Officer ("CEO"), effective April 1, 2018, with Perry's compensation set to increase as the Company's revenues increased. (Am. Compl. ¶¶ 11, 14.) The parties memorialized their agreement in a document titled "Independent Contractor Agreement" (the "Agreement"), which the parties executed on July 23, 2018. (Am. Compl. ¶¶ 11, 13–14; Am. Compl. Ex. 2, ECF No. 39.2.)

9. Of particular relevance to this Motion, the Agreement specifically provided that Perry would be paid a substantial bonus under certain conditions in the event the Company was sold for more than $1 million (the "Bonus"). (Am. Compl. Ex. 2 ¶ 17.) The Agreement also provided both Perry and the Company wide latitude in

---

[2] Defendants object to the Court's consideration of Exhibit 1 to the Amended Complaint in interpreting the Independent Contractor Agreement at issue in this case. The Court need not resolve Defendants' objection because the Court found it unnecessary to consider, and thus did not consider, Exhibit 1 in reaching its ruling on the Motion.

terminating the Agreement, and the Company agreed to pay Perry severance pay upon termination whether he was terminated with or without cause:

> Either party may terminate this Agreement by providing 90 days written notice to the other party of its desire to terminate the Agreement. . . . If Frigi-Temp terminates Perry's employment, Perry shall retain the corporate stock currently then owed by him, and he shall receive severance pay equal to twelve months compensation calculated by reference to that compensation received by him during the prior twelve month term.

(Am. Compl. Ex. 2 ¶ 4.)

10. Perry thereafter served as the Company's CEO until Gray terminated the Agreement on August 23, 2019. (Am. Compl. ¶ 48; Am. Compl. Ex. 25, ECF No. 34.25.) After the expiration of the Agreement's ninety-day notice period, (Am. Compl. Ex. 2 ¶ 4), Perry's services were terminated, effective November 21, 2019, (Am. Compl. ¶ 48). Perry alleges his termination was without cause and that Frigi-Temp has never contended otherwise. (Am. Compl. ¶ 48.)

11. Unbeknownst to Perry, Gray began negotiating a sale of the Company to TWC in March 2019. (Am. Compl. ¶ 19.) Those negotiations ultimately proved successful, and the Company was sold to TWC on January 17, 2020 for total consideration of $2,795,377.00, assuming certain post-closing earn-out targets are achieved (the "Sale"). (Am. Compl. ¶ 58.)

12. Perry filed the complaint initiating this action on the date of closing, (Compl., ECF No. 3), and amended his complaint as of right on March 5, 2020, (Am. Compl.). Perry asserts claims against Gray for breach of fiduciary duty and constructive fraud. He also asserts claims against the Company for breach of the

Agreement, a declaratory judgment determining Perry's percentage ownership in the Company and the amount of the Bonus, and for judicial dissolution of Frigi-Temp.

13. The Motion seeks to dismiss Perry's claims to the extent they seek recovery of the Bonus provided under Paragraph 17 of the Agreement. (Defs.' Partial Mot. Dismiss Pl.'s Am. Compl., ECF No. 41.)

14. After full briefing by the parties, the Court heard arguments on the Motion at a hearing by videoconference on July 14, 2020, at which all parties were represented by counsel.

15. The Motion is now ripe for resolution.

II.

LEGAL STANDARD

16. A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint." *Sanders v. State Pers. Comm'n*, 197 N.C. App. 314, 319, 677 S.E.2d 182, 186 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court views the allegations in the complaint "in the light most favorable to the non-moving party[,]" *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017) (quoting *Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 852, 786 S.E.2d 919, 923 (2016)), and determines "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[,]" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736 (2018) (quoting *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51, 790 S.E.2d 657, 659 (2016)). "[T]he complaint is to be liberally construed, and

the trial court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444, 666 S.E.2d 107, 116 (2008) (quoting *Meyer v. Walls*, 347 N.C. 97, 111–12, 489 S.E.2d 880, 888 (1997)).

17.    Dismissal of a complaint under Rule 12(b)(6) is proper only when: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Krawiec v. Manly*, 370 N.C. 602, 606, 811 S.E.2d 542, 546 (2018) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)).

18.    While "[a]s a general proposition . . . matters outside the complaint are not germane to a Rule 12(b)(6) motion[,] documents [that] are attached to and incorporated within a complaint . . . become part of the complaint" and may "be considered in connection with a Rule 12(b)(6) . . . motion without converting it into a motion for summary judgment." *Highland Paving Co. v. First Bank*, 227 N.C. App. 36, 40, 742 S.E.2d 287, 291 (2013) (quoting *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 203–04, 652 S.E.2d 701, 707 (2007)); *see also Eastway Wrecker Serv., Inc. v. City of Charlotte*, 165 N.C. App. 639, 642, 599 S.E.2d 410, 412 (2004) ("Since the exhibits to the complaint were expressly incorporated by reference in the complaint, they were properly considered in connection with the motion to dismiss[.]"), *disc. review denied*, 359 N.C. 410, 612 S.E.2d 318, *aff'd per curiam*, 360

N.C. 167, 622 S.E.2d 495 (2005).  The Court may "reject allegations [in the complaint] that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint."  *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

## III.

## ANALYSIS

19.    Defendants contend that Perry's Bonus-related claims must be dismissed on two separate and independent grounds: (i) that Perry was properly terminated under the Agreement prior to the Sale, rendering him ineligible for the Bonus under the Agreement's plain terms, thus requiring dismissal of Perry's claims for breach of contract and declaratory judgment to this extent, and (ii) that the economic loss rule bars Perry's recovery of the Bonus through his claims for breach of fiduciary duty and constructive fraud.  (Defs.' Mem. Supp. Partial Mot. Dismiss Am. Compl. [hereinafter "Defs.' Mem. Supp."], ECF No. 42.)  The Court addresses each of these contentions in turn.

### A.    Breach of Contract and Declaratory Judgment Claims

20.    Defendants' argument for dismissal of Perry's Bonus-related breach of contract and declaratory judgment claims hinges on their reading of Paragraph 17 of the Agreement.  Defendants contend that the clear and unambiguous language of that provision required Perry to be employed by the Company at the time of the Company's sale to TWC to qualify for the Bonus.  (Defs.' Mem. Supp. 8.)  Since Perry has pleaded he was not a Company employee at the time of the Sale, Defendants

contend that Perry's contract claims for the Bonus must therefore be dismissed. (Defs.' Mem. Supp. 8.) Perry challenges this interpretation and contends that Paragraph 17 makes plain that the Company's termination of his employment without cause did not extinguish his right to the Bonus under the Agreement. (Pl.'s Br. Opp'n Defs.' Partial Mot. Dismiss Am. Compl. 19 [hereinafter "Pl.'s Br. Opp'n"], ECF No. 62.)[3]

21. To resolve the parties' competing contentions, the Court must consult North Carolina's rules of contract construction. "[T]he goal of [contract] construction is to arrive at the intent of the parties when the [contract] was [executed][.]" *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 559, 681 S.E.2d 770, 774 (2009) (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978)). "A contract is to be construed as a whole and each clause and word must be considered with reference to the other provisions of the agreement and be given effect if possible by any reasonable construction." *Williams v. Nationwide Mut. Ins. Co.*, 269 N.C. 235, 240, 152 S.E.2d 102, 107 (1967). Importantly, "[i]t is presumed that each part of the contract means something." *Brown v. Lumbermens Mut. Cas. Co.*, 326 N.C. 387, 393, 390 S.E.2d 150, 153 (1990) (quoting *Bolton Corp. v. T.A. Loving Co.*, 317 N.C. 623, 628, 347 S.E.2d 369, 372 (1986)).

22. "When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the

---

[3] Perry filed his Brief in Opposition to Defendants' Partial Motion to Dismiss the Amended Complaint under seal on June 1, 2020, (ECF No. 60), and publicly on June 8, 2020, (ECF No. 62). For the purposes of this Order and Opinion, the Court will refer to the redacted, public version.

intention of the parties is a question of law." *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973).  In contrast, "[w]hen an agreement is ambiguous and the intention of the parties is unclear, . . . interpretation of the contract is for the jury." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008); *see also Frye Reg'l Med. Ctr., Inc. v. Blue Cross Blue Shield of N.C., Inc.*, 2020 NCBC LEXIS 51, at *28 (N.C. Super. Ct. Apr. 17, 2020) ("[I]f the court determines that 'the terms of the contract are ambiguous [and] resort to extrinsic evidence is necessary' then the question of construction of the contract is one for the jury." (quoting *Whirlpool Corp. v. Dailey Constr., Inc.*, 110 N.C. App. 468, 471, 429 S.E.2d 748, 751 (1993))).

23.    "[W]hether the language of a contract is ambiguous is a question of law[.]" *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680, 821 S.E.2d 360, 366 (2018).  "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Register v. White*, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004).  "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assocs., Inc.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988).

24.    With these principles in mind, the Court turns to Paragraph 17 of the Agreement.  That provision provides, in its entirety, as follows:

> In the event that shareholders of Frigi-Temp sell a controlling interest in that corporation or substantially all of its assets to a third party while Perry serves in the capacity specified herein on a date of more than four (4) years after its effective date, Perry shall receive a bonus equal to

twenty-five percent (25%) of the amount of such sales price which is in excess of $1,000,000.00. If such sale occurs prior to the expiration of a four year period beginning with the effective date of this Agreement, while Perry serves in such capacity, Perry shall receive a bonus equal to twenty-five percent (25%) of the amount of such sales price which is in excess of $1,000,000.00 plus annual compensation amount figured as in Article 3 above, using the then current year revenue forecast. If Frigi-Temp terminates Perry's position for cause prior to such sale, or, if for any other reason, Perry is not serving in such capacity at the time of such sale, he shall not be entitled for any payment upon the sale of the corporation or its assets.

(Am. Compl. Ex. 2 ¶ 17; *see also* Am. Compl. ¶ 12.)

25. The first two sentences of Paragraph 17 concern the amount of the Bonus based on whether Perry had been employed four or more years at the Company, and the last sentence addresses circumstances in which Perry would not be entitled to a Bonus. Defendants focus their argument on the last sentence.

26. Defendants argue that the last sentence of Paragraph 17 describes in two parts the entirety of the circumstances in which Perry would be ineligible for the Bonus at the time of the Company's sale: (i) if Perry was no longer employed by the Company because he had been terminated for cause and (ii) if Perry was no longer employed by the Company for any other reason. (Defs.' Mem. Supp. 10.) Defendants argue that, when read in its entirety, Paragraph 17's last sentence is intended to preclude Perry from a Bonus if he was not employed by the Company for any reason whatsoever at the time of a sale, including if he had been terminated for cause. (Defs.' Mem. Supp. 10.) The Court finds Defendants' reading of Paragraph 17 reasonable based on its plain language.

27.    Perry argues in opposition for an alternative construction. He contends that the provision's Bonus exclusion in the event Perry was terminated "for cause" "can only be understood as a bonus-specific limitation on Frigi-Temp's general right to terminate on 90 days' notice[,]" (Pl.'s Br. Opp'n 19), referring to Paragraph 4's statement that "[e]ither party may terminate this Agreement by providing 90 days written notice to the other party of its desire to terminate the Agreement[,]" (Am. Compl. Ex. 2 ¶ 4). According to Perry, Paragraph 17's reference to "any other reason," juxtaposed as it was to the "for cause" exclusion, could only reasonably be read to contemplate a "separation that would be caused by *Perry* (resignation, retirement, etc.) or by some external cause (death, disability, etc.)." (Pl.'s Br. Opp'n 19.)

28.    The Court finds Plaintiff's reading of Paragraph 17 also reasonable, particularly when the Court considers that "an interpretation which gives a reasonable meaning to all provisions of a contract will be preferred to one which leaves a portion of the writing useless or superfluous[.]" *Malone v. Barnette*, 241 N.C. App. 274, 282, 772 S.E.2d 256, 262 (2015); *see also Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 94, 414 S.E.2d 30, 34 (1992) ("[I]t is a fundamental rule of contract construction that the courts construe an ambiguous contract in a manner that gives effect to all of its provisions, if the court is reasonably able to do so." (citing *Woods*, 295 N.C. at 505–06, 246 S.E.2d at 777)).

29.    Indeed, both the last sentence of Paragraph 17 and the "for cause" exclusion within it would appear to be unnecessary if the parties intended that Perry would not be eligible for a Bonus if he were not employed by the Company as its CEO for any

reason at the time of a sale as Defendants contend. The opening two sentences of Paragraph 17 describe the Bonus entitlement, and both sentences contemplate that Perry would receive the Bonus only if he were employed as the Company's CEO upon a sale, with the amount of the Bonus dependent on how long Perry had served as CEO. In that regard, the last sentence, if interpreted to exclude Perry from the Bonus if he was not an employee for any reason, would appear to add nothing new.

30. Similarly, if the last sentence itself was intended to provide that any cessation of Perry's employment would render him ineligible for the Bonus, the sentence's reference to "for cause" termination would appear to be unnecessary. This sentence could simply reference "for any reason" alone to accomplish its intended goal. In these circumstances, the Court concludes that Perry's construction of Paragraph 17 is reasonable and renders its last sentence and the "for cause" exclusion therein to have purpose and meaning within the Agreement as a whole.

31. Because the Court finds that Paragraph 17, viewed within the context of the Agreement as a whole, is capable of at least two reasonable interpretations, the Court concludes that the paragraph is ambiguous. *See, e.g.*, *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 525, 723 S.E.2d 744, 748 (2012) ("An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." (quoting *Schenkel & Shultz*, 362 N.C. at 273, 658 S.E.2d at 921)). The extrinsic evidence attached to Plaintiff's Amended Complaint does not affect this conclusion.

32. Certainly, it is possible that the parties included the last sentence, and the "for cause" exclusion, in Paragraph 17 to make clear that Perry was ineligible for the Bonus if his employment with the Company ceased for any reason prior to a sale. It is also possible that the parties agreed and understood that the Bonus would be paid if Perry was terminated without cause and attempted to draft Paragraph 17's Bonus exclusion to achieve that result. The Court cannot draw either conclusion on the limited record before the Court on this Motion under Rule 12(b)(6).

33. The Court thus concludes that Defendant's Motion to dismiss Plaintiff's Bonus-based claims for breach of contract and declaratory judgment should be denied. *See, e.g.*, *W & W Partners, Inc. v. Ferrell Land Co.*, 2018 NCBC LEXIS 52, at *20–21 (N.C. Super. Ct. May 22, 2018) (denying motion to dismiss breach of contract claim because the agreement was ambiguous).

B. Breach of Fiduciary Duty and Constructive Fraud Claims

34. Defendants contend that the economic loss rule requires the dismissal of Perry's claims against Gray for breach of fiduciary duty and constructive fraud to the extent those claims seek recovery of the Bonus. (Defs.' Mem. Supp. 18–24.) Defendants assert that because those claims are "indistinguishable from Plaintiff's core contract claim" and involve "no loss or wrongful conduct separate or distinct from [the] breach of contract claim[,]" they should be dismissed. (Defs.' Mem. Supp. 19.) Perry argues in opposition that the economic loss rule does not apply because his breach of fiduciary duty and constructive fraud claims are not based in contract but instead on "the legal relation of majority [Gray] and minority [Perry] shareholders[,]"

which required Gray "at a minimum not [to] tak[e] action to defeat Perry's right to the bonus he had earned in order to keep all of the money for himself." (Pl.'s Br. Opp'n 16.)

35. "The economic loss rule, as it has developed in North Carolina, generally bars recovery in tort for damages arising out of a breach of contract[.]" *Rountree v. Chowan Cty.*, 252 N.C. App. 155, 159, 796 S.E.2d 827, 830 (2017). As explained by our Court of Appeals:

> [A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract. It is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation.

*Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 639, 643 S.E.2d 28, 30–31 (2007) (quoting *Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741–42 (1992)); *see also N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978) (holding that "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor"), *rejected in part on other grounds by Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 241–43, 328 S.E.2d 274, 280–82 (1985).

36. To maintain a viable tort action, a plaintiff's claim "must be grounded on a violation of a duty imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties[.]" *Asheville Contracting Co. v. City of Wilson*, 62 N.C. App. 329, 342, 303 S.E.2d 365,

373 (1983). As such, a successful plaintiff must "identify a duty separate and distinct from [its] contractual obligations." *Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *8 (N.C. Super. Ct. Jan. 5, 2016); *see also Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *48 (N.C. Super. Ct. Nov. 3, 2011) ("To state a viable claim in tort for conduct that is also alleged to be a breach of contract, 'a plaintiff must allege a duty owed to him by the defendant separate and distinct from any duty owed under a contract.' " (quoting *Kelly v. Ga.-Pac. LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009))).

37. Perry seeks to avoid the application of the economic loss rule here by purporting to base his claims on the fiduciary duty that Gray owed, as the Company's majority shareholder, to Perry, as the Company's minority shareholder, and not on his duties under the Agreement. (Pl.'s Br. Opp'n 13–16.) While it is certainly true that a contracting party may have fiduciary duties to his counterparty that are separate and distinct from his contractual duties and thus may be enforceable in tort, *see, e.g.*, *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 105 (3d Cir. 2001) (rejecting economic loss rule challenge to breach of fiduciary duty claim because fiduciary duties and remedies exceeded those under the parties' contract), Perry's difficulty here is that the injury he has allegedly suffered, and the damages he seeks to recover for his breach of fiduciary duty and constructive fraud claims, are created by and available only under Paragraph 17 of the Agreement.

38. Our courts have made clear that the economic loss rule precludes a tort action "when the injury resulting from the breach [of an alleged duty] is damage to

the subject matter of the contract." *Spillman*, 108 N.C. App. at 65, 422 S.E.2d at 741–42; *see also, e.g.*, *Land v. Tall House Bldg. Co.*, 165 N.C. App. 880, 883, 602 S.E.2d 1, 3 (2004) ("We believe that Tall House failed to perform the terms of the contract, and this failure resulted in injury to the subject matter of the contract, the home. Thus, the law of contract . . . defines the obligations and remedies of the parties."); *City of High Point v. Suez Treatment Sols. Inc.,* No. 1-19-CV-540, 2020 U.S. Dist. LEXIS 47641, at *17 (M.D.N.C. Mar. 19, 2020) (applying North Carolina's economic loss rule to bar negligence claim where alleged tort duty was directly related to the subject matter of the parties' contract).

39.    The subject matter of the parties' Agreement includes Perry's alleged right to receive the Bonus, and the injury Perry claims he has suffered is injury to that right caused by Defendants' failure to pay the Bonus. Under North Carolina law, Perry's remedy thus exists, if it exists at all, as a matter of contract, not through tort. Because Perry seeks here to recover in tort "damage to the subject matter of the [parties' Agreement,]" i.e., the Bonus, the Court concludes that to the extent Perry's claims for breach of fiduciary duty and constructive fraud seek recovery of the Bonus, the economic loss rule requires their dismissal.[4] *See, e.g., Wilkins v. Wachovia Corp.*, No. 5:10-CV-249, 2011 U.S. Dist. LEXIS 30896, at *6 (E.D.N.C. Mar. 24, 2011) (applying economic loss rule to bar breach of fiduciary duty claims which arose "out

---

[4] The cases on which Perry relies do not change this result as none of those decisions involved, as here, tort claims based on a breach of fiduciary duty where plaintiff's alleged injury was damage to the subject matter of the parties' contract. (*See* Pl.'s Br. Opp'n 13–15 (citing *Conti v. Fid. Bank & Assurance Co. (In re NC & VA Warranty Co.)*, 594 B.R. 316 (Bankr. M.D.N.C. 2018), *Provectus Biopharmaceuticals, Inc. v. RSM US LLP*, 2018 NCBC LEXIS 101 (N.C. Super. Ct. Sept. 28, 2018), and *Cummings v. Carroll*, 841 S.E.2d 555 (N.C. Ct. App. 2020)).).

of the duties in the . . . agreement and relate to contract performance"); *Haigh v. Superior Ins. Mgmt. Grp., Inc.*, 2017 NCBC LEXIS 100, at *19 (N.C. Super. Ct. Oct. 24, 2017) (dismissing breach of fiduciary duty claim where alleged wrongdoing was "a result of the parties' *contractual* relationship, not as a result of a *fiduciary* relationship" and would be "better resolved through contract principles, rather than general principles of fiduciary relationships").

## IV.

## CONCLUSION

40. **WHEREFORE**, for the reasons set forth above, the Court hereby **ORDERS** as follows:

    a. Defendants' Motion is **DENIED** as to Perry's Bonus-related claims for breach of contract and declaratory judgment; and

    b. Defendants' Motion is **GRANTED** as to Perry's claims for breach of fiduciary duty and constructive fraud to the extent those claims seek payment of the Bonus, and those claims, as limited, are therefore **DISMISSED with prejudice**.

**SO ORDERED**, this the 3rd day of September, 2020.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge