ANGELA DAWES, ADMINISTRATRIX OF THE ESTATE OF EFFIE HENDRICKS v. NASH COUNTY AND NASH COUNTY EMERGENCY MEDICAL SERVICES, A DIVISION OF NASH COUNTY

No. 117A02

(Filed 22 August 2003)

**Immunity— sovereign—insurance—exclusion—acts of EMTs**

 Sovereign immunity did not provide a defense to a county for a wrongful death action arising from the actions of its emergency medical technicians (EMTs) and summary judgment should not have been granted for the county. Although defendant argued that a provision in the county's insurance policy exempting EMTs from an exclusion should be read as applying to EMTs in their individual capacity, that contention is not supported by the plain language of the policy.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 148 N.C. App. 641, 559 S.E.2d 254 (2002), affirming an order signed 2 November 2000 by Judge Quentin T. Sumner in Superior Court, Nash County. Heard in the Supreme Court 14 October 2002.

*Duffus & Melvin, P.A., by R. Bailey Melvin, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., and Mark A. Davis, for defendant-appellees.*

ORR, Justice.

This case arises out of a negligence claim against emergency medical technicians (EMTs) employed by defendant Nash County.

─────────

any attempt to locate and produce K.S., we do not reach this question in the present case.

## DAWES v. NASH CTY.

[357 N.C. 442 (2003)]

Plaintiff contends that Nash County has waived the defense of sovereign immunity by purchasing an insurance policy pursuant to N.C.G.S. § 153A-435. Defendant Nash County argues that the proper interpretation of the policy does not provide insurance coverage for the county under the facts of this case and that sovereign immunity mandated summary judgment for the County. The trial court and a majority of the Court of Appeals agreed with defendant's position. For the reasons set forth below, we do not agree, and we therefore reverse the Court of Appeals.

On 5 September 1998, Nash County Emergency Medical Services (Nash County EMS) responded to a call for assistance concerning plaintiff's aunt, Effie Hendricks. Ms. Hendricks collapsed while attending her brother's funeral, was helped to a bed within the church, and was sitting up when EMTs arrived on the scene. Shortly after the EMTs began attending to Ms. Hendricks, she slumped over and stopped breathing. The EMTs tried several times to intubate Ms. Hendricks in order to give her oxygen, but they were unsuccessful. Upon arrival at the Nash County General Hospital emergency room, the attending physician was able to intubate Ms. Hendricks. She was diagnosed with severe anoxic encephalopathy[1], more commonly referred to as a lack of oxygen to the brain. Ms. Hendricks remained in a coma in the hospital for the week following her collapse and died on 12 September 1998.

On 19 July 2000, plaintiff Angela Dawes, as administratrix for the estate of Effie Hendricks, filed a wrongful death action against Nash County EMS. She subsequently filed an amended complaint naming Nash County and Nash County EMS, a division of Nash County, as defendants. In her amended complaint plaintiff alleged that defendants were negligent in the following respects:

(a) The paramedics who arrived on the scene failed to supply Ms. Hendricks with supplemental oxygen between 3:34 p.m. and 3:48 p.m.

(b) The Valium, which was given to Ms. Hendricks, was given in too small of a dose to have the desired effect of helping the paramedics intubate Ms. Hendricks.

---

1. Anoxic is "having less than the normal amount of oxygen in the cells or tissues of the body." 2 J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine and Word Finder* A-397 (2001). Encephalopathy is a "disease of the brain." 1 J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine and Word Finder* E-87 (2001).

(c) The paramedics made repeated attempts at intubation which greatly delayed Ms. Hendricks' arrival at Nash General Hospital.

(d) Defendant's employees who cared for and treated Ms. Hendricks failed to exercise reasonable and ordinary care and diligence in the use of their skill and the application of their knowledge to Ms. Hendricks' case.

(e) Defendant's employees who cared for and treated Ms. Hendricks failed to exercise their best judgment in the treatment and care of Ms. Hendricks.

(f) Defendant's employees who cared for and treated Ms. Hendricks failed to possess the required degree of learning, skill and ability necessary to the practice of their profession which others similarly situated normally possess.

(g) Defendant was negligent in such other respects as may be shown at trial.

Defendant Nash County EMS subsequently filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure. Defendants Nash County and Nash County EMS also filed a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure.

In an order signed 2 November 2000, the trial court granted the motion for judgment on the pleadings in favor of Nash County EMS and the motion for summary judgment based on sovereign immunity in favor of Nash County and Nash County EMS. Plaintiff appealed to the Court of Appeals, which affirmed the trial court's grant of summary judgment based on the affirmative defense of sovereign immunity for Nash County. Plaintiff presented no argument in its brief to the Court of Appeals as to the trial court's grant of judgment on the pleadings and summary judgment for Nash County EMS. Thus, the only issue before the Court of Appeals, and now before this Court, is whether Nash County is entitled to summary judgment based on sovereign immunity.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). The movant has the burden

of proof. *Roumillat v. Simplistic Enters.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992); *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985); *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975). "The showing required for summary judgment may be accomplished by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). In this case, the trial court ruled that summary judgment was appropriate because defendant properly asserted the affirmative defense of sovereign immunity to bar plaintiff's claim, and the Court of Appeals affirmed that ruling.

Sovereign immunity stands for the proposition that the "the State cannot be sued except with its consent or upon its waiver of immunity." *Paul L. Whitfield, P.A. v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998); *see also Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983). "The counties are recognizable units that collectively make up our state, and are thus entitled to sovereign immunity under North Carolina law," *Archer v. Rockingham Cty.*, 144 N.C. App. 550, 553, 548 S.E.2d 788, 790 (2001), *disc. rev. denied*, 355 N.C. 210, 559 S.E.2d 796 (2002), unless the county waives immunity or otherwise consents to be sued.

N.C.G.S. § 153A-435 provides that such a waiver is manifested by the purchase of liability insurance. N.C.G.S. § 153A-435 provides in pertinent part:

> (a) A county may contract to insure itself and any of its officers, agents, or employees against liability for wrongful death or negligent or intentional damage to person or property or against absolute liability for damage to person or property caused by an act or omission of the county or of any of its officers, agents, or employees when acting within the scope of their authority and the course of their employment. The board of commissioners shall determine what liabilities and what officers, agents, and employees shall be covered by any insurance purchased pursuant to this subsection.

> *Purchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function. . . .*

(b) If a county has waived its governmental immunity pursuant to subsection (a) of this section, any person, or if he dies, his personal representative, sustaining damages as a result of an act or omission of the county or any of its officers, agents, or employees, occurring in the exercise of a governmental function, *may sue the county for recovery of damages. To the extent of the coverage of insurance purchased pursuant to subsection (a) of this section, governmental immunity may not be a defense to the action.*

N.C.G.S. § 153A-435 (2001) (emphasis added). "A county may, however, waive such immunity through the purchase of liability insurance." *Doe v. Jenkins*, 144 N.C. App. 131, 134, 547 S.E.2d 124, 126 (2001), *disc. rev. dismissed as moot*, 355 N.C. 284, 560 S.E.2d 798, *and disc. rev. denied*, 355 N.C. 284, 560 S.E.2d 799 (2002). However, "[i]mmunity is waived only to the extent that the [county] is indemnified by the insurance contract from liability for the acts alleged." *Combs v. Town of Belhaven*, 106 N.C. App. 71, 73, 415 S.E.2d 91, 92 (1992), *quoted in Doe*, 144 N.C. App. at 134, 547 S.E.2d at 126.

In this case, it is uncontested that Nash County purchased a comprehensive insurance policy covering the time period in which the alleged acts of negligence took place. This policy included a separate section covering general liability that provides specifically in part the following:

—SECTION II—

GENERAL LIABILITY COVERAGE

A. Coverage Agreement

The Fund agrees, subject to the limitations, terms, and conditions hereunder mentioned:

1. to pay on behalf of the Participant all sums which the Participant shall be obligated to pay by reason of the liability imposed upon the Participant by law or assumed by the Participant under contract or agreement for damages on account of Personal Injuries, including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Participant injured in the course of their employment)[.]

Subsection H of section II defines the "Covered Persons" under the policy:

1. the Participant—the covered political subdivision named in the Contract Declarations[;]

2. any elected or appointed official of the Participant while acting within the scope of his authority, or apparent authority, expressed or implied, but only with respect to his liability while acting within the scope of his authority;

3. any employees of the Participant while acting within the scope of their duties, as such; and

4. any person or organization while acting as agent for the Participant, within the scope of his duties.

Further, the policy contained certain enumerated exclusions in subsection E of section II, titled "Exclusions Applicable to General Liability." Defendant contends that the exclusion in paragraph 18 of subsection E, titled "Hospital and Health Clinic Professional Liability," removes the alleged negligent acts of the EMTs in question from coverage under the general liability section, and thus, sovereign immunity is not waived by virtue of the county's insurance policy. That exclusion provides as follows.

18. Hospital and Health Clinic Professional Liability

To Personal Injury to any person arising out of the rendering of or failure to render any of the following professional services:

a. medical, surgical, dental, or nursing treatment to such person or the person inflicting the injury including the furnishing of food or beverages in connection therewith; or

b. furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

c. handling of or performing post-mortem examinations on human bodies; or

d. service by any person as a member of a formal accreditation or similar professional board or committee participant, or as a person charged with the duty of executing directives of any such board or committee.

** **However, this exclusion shall not apply to liability of county employed or county volunteer Emergency Medical Technicians.**

Plaintiff contends that the proviso at the bottom of subsection E, paragraph 18, removes EMTs from the exclusions and thus subjects Nash County to liability based upon its waiver of sovereign immunity. Defendant counters this argument by contending that this proviso applies to EMTs working in their individual capacity and not their official capacity and that sovereign immunity was therefore not waived.

Defendant argues that the exclusions were written broadly and that the proviso was written narrowly. Therefore, defendant contends the policy's intent was to "insure[] emergency medical technicians employed by Nash County for claims against them in their individual capacities alleging negligence in the performance of emergency ambulance services (to which sovereign immunity does not apply) without separately insuring Nash County for claims directly against it (since the County is protected from such claims by sovereign immunity)." Defendant further argues that had the intent of the policy been to provide coverage for EMTs, then the proviso would have been written as follows: "However, this exclusion shall not apply to any liability <u>arising out of or in connection with</u> the acts or omissions of county employed Emergency Medical Technicians." Defendant reasoned, and the Court of Appeals agreed, that the single use of the word "liability" in the proviso must refer only to the personal liability of EMTs, not to official liability, because "[s]uits against governmental employees in their official capacity do not lead to 'liability' against the individual governmental employee." *Dawes v. Nash Cty.*, 148 N.C. App. 641, 648 n.1, 559 S.E.2d 254, 259 n.1 (2002).

Our courts have long followed the traditional rules of contract construction when interpreting insurance policies. *See Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978); *McDowell Motor Co. v. New York Underwriters Ins. Co.*, 233 N.C. 251, 253, 63 S.E.2d 538, 540 (1951). As our Court explained in *Woods*,

> [t]he various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance com-

pany and in favor of the policyholder. Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

295 N.C. at 506, 246 S.E.2d at 777.

The fallacy in defendant's argument, though innovative and persuasive, is contained in the specific terms of the policy setting forth the coverage agreement. Defendant Nash County contracted with North Carolina Counties Liability and Property Insurance Pool Fund (the Fund) to create the policy at issue. Nash County is the "Participant" or the party insured as stated on the declarations page. As we stated earlier, the policy specifically provides: "The Fund agrees . . . to pay on behalf of the *Participant* all sums which the *Participant* shall be obligated to pay by reason of the liability *imposed upon the Participant* . . . under contract or agreement for damages on account of *Personal Injuries, including death* at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons . . . including but not limited to, . . . Incidental Malpractice . . . ." (Emphasis added.) In subsection K of section II, "incidental malpractice" is defined as "emergency professional medical services rendered or which should have been rendered to any person or persons . . . by . . . Technicians employed by or acting on behalf of the *Participant*." (Emphasis added.) "Technician" is defined in the policy as "a certified first responder, certified emergency medical technician, certified intravenous technician, certified paramedic, or ambulance driver."

"Where a policy defines a term, that definition is to be used." *Woods*, 295 N.C. at 505-06, 246 S.E.2d at 777. Thus, the above portions of the policy plainly provide that the Fund will pay *"on behalf of the Participant"* damages incurred as the result of actions taken by the County's EMTs whether employed or voluntary. This coverage provision is consistent with the plain language of the proviso.

The exclusions in paragraph 18 *"shall not apply to liability of county employed or county volunteer Emergency Medical Technicians."* (Emphasis added.) Nothing in the coverage provision of the policy provides coverage for EMTs in their individual capacity. Coverage for liability to be paid by the Fund is available only when it is imposed against the participant (defendant Nash County) or

selected covered persons (as defined in subsection H of section II) acting in an official capacity. In order for defendant's argument to prevail, the policy in question would need to provide coverage for, and agree for the Fund to pay for, liability incurred by EMTs in their individual capacities. Nothing in the coverage agreement provides for any other entity or personnel to be insured or covered other than the participant county and those county officials and employees named in section II, subsection H, titled "Covered Persons." The argument by defendant interpreting the proviso at the bottom of section II, subsection E, paragraph 18 to cover EMTs in an individual capacity simply is not supported by the plain language of the policy. The insurer (the Fund) has in no way obligated itself to cover and pay for acts by individuals not a party to the insurance contract and for whose acts the participant is not responsible except in their official capacities.

As we have concluded that the insurance policy in question does provide coverage for defendant County for the acts of its EMTs, the County's defense of sovereign immunity cannot prevail. Therefore, we reverse the decision of the Court of Appeals, which affirmed the trial court's grant of summary judgment for the County, and we remand this case to that court for further remand to the Superior Court, Nash County, for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.