**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1993**

PACIFIC AG GROUP; ALLIANCE FARM GROUP, INCORPORATED,

Plaintiffs - Appellees,

v.

H. GHESQUIERE FARMS, INCORPORATED; GHESQUIERE PLANT FARMS
LIMITED; STRAWBERRY HILL, INCORPORATED,

Defendants - Appellants.

Appeal from the United States District Court for the Eastern
District of North Carolina, at New Bern. Louise W. Flanagan,
Chief District Judge. (5:05-cv-00809-FL)

Submitted: January 13, 2011          Decided: March 29, 2011

Before WILKINSON, DUNCAN, and AGEE, Circuit Judges.

Reversed by unpublished per curiam opinion.

John R. Wallace, Joseph A. Newsome, WALLACE, NORDAN & SARDA,
L.L.P., Raleigh, North Carolina, for Appellants. Paige C.
Kurtz, SPROUSE & KURTZ, PLLC, Raleigh, North Carolina, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

H. Ghesquiere Farms, Inc. ("Ghesquiere Farms") appeals the district court's judgment finding it liable to Pacific Ag Group ("Pacific Ag") for $190,600 in damages (plus interest) stemming from a contract dispute between the parties. For the reasons that follow, we reverse.[*]

In 2003, Pacific Ag purchased a quantity of strawberry runner tips (infant strawberry plants) from Ghesquiere Farms. Pacific Ag contended that the runner tips were sub-standard and infected with a disease that made them unusable and did not tender payment. Ultimately, Ghesquiere Farms sued Pacific Ag in North Carolina state court, and the action was removed to the district court. See Strawberry Hill, Inc. v. Alliance Farm Group, Inc., No. 5:03-cv-795-FL (E.D.N.C.).

As the federal litigation was pending, Frank Sances, Pacific Ag's principal, met with Carl Ghesquiere, Ghesquiere Farm's principal, to discuss settling the litigation. Ghesquiere became aware that Pacific Ag had been late planting their fields that season, and saw an opportunity to immediately

---

[*] On December 20, 2010, Ghesquiere Plant Farms Limited filed a "Suggestion of Bankruptcy" notifying the court and the opposing parties that it had filed for bankruptcy in a Canadian court. No party has suggested or argued that the bankruptcy filing prevents this court from issuing its decision in this case.

2

supply young strawberry plants to Pacific Ag. At the end of their meeting, Sances and Ghesquiere (without the assistance of counsel) drafted and executed a settlement agreement that ultimately became the subject of the instant appeal.

The agreement provided that Ghesquiere Farms would provide 500,000 strawberry runner tips to Pacific Ag free of charge before July 26, 2004. The agreement also required Ghesquiere Farms to sell additional, high quality strawberry runner tips at a discounted rate to Pacific Ag in 2004, 2005, and 2006. The agreement provided for dismissal of the litigation "following successful performance by Ghesquiere Farms[.]" Paragraph 8 of the settlement agreement contained a provision that "[i]f Ghesquiere Plant Farms ceases growing strawberry runner tips for [Pacific Ag], the full amount of promised discounts will be paid by Ghesquiere to [Pacific Ag]." The parties (now assisted by counsel) later entered an addendum to the settlement agreement providing for more gifting of plants in 2005 and facilitating the dismissal of the previous litigation.

In late 2004, Sances and Ghesquiere began negotiations for the purchase of strawberry runner tips for 2005. Sances claims that he repeatedly informed Ghesquiere that he might not have any orders for 2005 based on the market and the quality of Ghesquiere's plants in 2003 and 2004. Sances ultimately did

3

make two identical written offers to purchase runner tips consistent with the agreement. Ghesquiere never accepted the offers, however, as he and Sances continued to disagree on the amount of the discount to be provided, whether payment was due in advance, and whether inspection would occur before shipping or after delivery.

When Sances and Ghesquiere were unable to reach an agreement for the purchase of runner tips in 2005, Sances informed Ghesquiere that he had no purchases from his customers and would be doing no business with Ghesquiere Farms for the 2005 season. Sances later confirmed in writing that Pacific Ag would not purchase any plants from Ghesquiere Farms. In a June 2005 memorandum, Sances informed Ghesquiere that "the full amount of the discount is due" as a repayment for the damages suffered from the sale of defective Ghesquiere Farms plants in 2003.

Ghesquiere Farms failed to tender payment in response to Sances's communication, and Pacific Ag brought a complaint against Ghesquiere Farms in district court. The complaint sought damages resulting from Ghesquiere Farms's alleged failure to perform on the settlement agreement by providing discounted runner tips to Pacific Ag. After a bench trial, the district court ruled in favor of Pacific Ag and awarded $190,600 in damages (plus interest). The court based its ruling primarily

4

on the conclusions that the term "ceases" in the settlement agreement was ambiguous and that when the parties were unable to reach an agreement for the purchase of runner tips in 2005, Ghesquiere Farms "ceased" growing strawberry plants for Pacific Ag. When Ghesquiere Farms did not pay the amount of the discount, the district court ruled that it breached the agreement. Ghesquiere Farms noted a timely appeal.

This court reviews a district court's conclusions of law at the bench trial de novo and its factual findings for clear error. Roanoke Cement Co. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005). Ghesquiere Farms argues that the term "ceases" is unambiguous and should not be read to impose liability on them when Pacific Ag failed to place an order for runner tips. Pacific Ag, on the other hand, claims that the language is subject to more than one reasonable interpretation when viewed in the context of the agreement as a whole. Pacific Ag further contends that analysis of extrinsic evidence reveals that the parties intended for Pacific Ag to be able to elect either to purchase runner tips at a discount or take the value of the discount in cash.

The parties agree that North Carolina's law of contracts applies to their claims. "When the language of a written contract is plain and unambiguous, the contract must be interpreted as written and the parties are bound by its terms."

Atlantic & E. Carolina Ry. Co. v. Wheatley Oil Co., 594 S.E.2d 425, 429 (N.C. Ct. App. 2004). An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations. Schnkel & Schultz, Inc. v. Hermon F. Fox & Assocs., 658 S.E.2d 918, 922 (N.C. 2008) (citations omitted). In determining whether a phrase is ambiguous, "words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible[.]" Piedmont Bank and Trust Co. v. Stevenson, 339 S.E.2d 49, 52 (N.C. Ct. App. 1986). A court may not, "in the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." Dawes v. Nash Cnty., 584 S.E.2d 760, 764 (N.C. 2003) (internal citation omitted).

The district court stated that "[a] reading of the 2004 [s]ettlement [a]greement which binds plaintiffs to trade in strawberry runner tips in order to be compensated for losses sustained as a result of purchase of tips from defendants in 2003, in the face of the facts of this case, is nonsensical." We do not agree. As the court itself noted, the predominant purpose of the agreement was to facilitate the continuing business relationship between the parties, not merely to settle past debts.

6

Our review of the agreement leads us to conclude that the reading proposed by Pacific Ag is not a reasonable one and accordingly, the term "ceases" is not ambiguous. "Ceases" in the context of the settlement agreement, means just that. There is no indication in the agreement that the parties intended to give Pacific Ag an election to seek either to trade with Ghesquiere Farms or to demand a monetary award. If that were the case, Pacific Ag would have had no incentive to purchase runner tips from Ghesquiere Farms and every incentive to simply elect the cash option. Rather, the agreement clearly contemplated a continuing business relationship between Ghesquiere Farms and Pacific Ag unless Ghesquiere Farms stopped (i.e., ceased) growing runner tips.

Because we conclude that the agreement was not ambiguous, we need not review the extrinsic evidence contained in the record. Furthermore, we need not address the district court's conclusion that parol evidence shows that the parties intended a different outcome. Finally, though Ghesquiere Farms did file a counterclaim against Pacific Ag that was dismissed by the district court, it has not sought to appeal that issue, and it is abandoned.

We therefore reverse the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials

7

before the court and argument would not aid the decisional process.

REVERSED