IN THE SUPREME COURT OF NORTH CAROLINA

No. 113A22

Filed 22 March 2024

ESTATE OF GREGORY GRAHAM

v.

ASHTON LAMBERT, individual and official capacity, FAYETTEVILLE POLICE
DEPARTMENT, and CITY OF FAYETTEVILLE

On discretionary review pursuant to N.C.G.S. § 7A-31 and on appeal pursuant
to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals,
282 N.C. App. 269 (2022), reversing an order denying summary judgment entered on
16 July 2020 by Judge Mary Ann Tally in Superior Court, Cumberland County. Heard
in the Supreme Court on 31 October 2023.

*Law Offices of Antonio F. Gerald, by Kevin Vidunas; and O'Malley Tunstall,*
*PLLC, by Joseph P. Tunstall III and Peter J. Tomasek, for plaintiff-appellants.*

*Cranfill Sumner LLP, Steven A. Bader and James C. Thornton, for defendants-*
*appellees.*

*Roberts & Stevens, PA, by David C. Hawisher, for North Carolina Association*
*of Defense Attorneys, amicus curiae.*

*Tin Fulton Walker & Owen, PLLC, by Abraham Rubert-Schewel, for North*
*Carolina Advocates for Justice, amicus curiae.*

EARLS, Justice.

Just before midnight on 24 July 2018, Officer Ashton Lambert struck Gregory
Graham with his police cruiser while responding to a call. Mr. Graham died at the
scene. After the collision, Mr. Graham's Estate sued Officer Lambert in his official

and individual capacities, alleging negligence, gross negligence, and wrongful death. The Estate brought the same claims against the officer's employers—the City of Fayetteville (City) and the Fayetteville Police Department (Police Department). The Police Department was dismissed as an improper party. Before trial, the City and Officer Lambert moved for summary judgment, arguing that governmental and public officer immunity barred the Estate's claims. The trial court denied their motions; the Court of Appeals reversed. *Est. of Graham v. Lambert*, 282 N.C. App. 269, 271 (2022).

In reaching its conclusion, the Court of Appeals improperly analyzed the summary judgment order before it. To examine whether the City waived governmental immunity by buying liability insurance, the court focused on the sufficiency of the Estate's complaint, rather than the presence of a genuine factual dispute. *Id.* at 273–74. Put differently, the court imported the Rule 12(b)(6) standard into the realm of summary judgment. *See* N.C.G.S. § 1A-1, Rule 12(b)(6) (2023).

That misguided analysis yielded a misguided result as to immunity. By statute, the City's insurance coverage dictates whether it has waived governmental immunity on the Estate's claim. *See* N.C.G.S. § 160A-485 (2023). The same is true for the official capacity suit against Officer Lambert, as that claim is—in effect—one against the City. We thus reverse the Court of Appeals as to the City's waiver of immunity and remand for it to analyze "whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact" on that point. *See*

*Summey v. Barker*, 357 N.C. 492, 496 (2003).

We also clarify the legal framework for suits to which N.C.G.S. § 20-145 (2023) applies. That statute exempts police officers from speed limits when chasing or apprehending criminal absconders. *Id.* But it does not shield officers for their gross negligence. *See Young v. Woodall*, 343 N.C. 459, 462 (1996). The Estate contends—and the Court of Appeals assumed—that section 20-145 exposes the City to liability for Officer Lambert's conduct. In other words, that the statute waived governmental immunity. But because section 20-145 focuses on individual drivers and individual responsibility, it sets "gross negligence" as the metric for personal liability in personal capacity claims. There is no basis in the statute's plain language, however, to conclude that it also waives the City's immunity.

The dissenting Court of Appeals judge would have denied defendants' motion for summary judgment on the gross negligence claim. Viewing the evidence in the light most favorable to the Estate, the dissenting judge found a genuine issue of material fact on the question of whether Officer Lambert was grossly negligent. *See Est. of Graham*, 282 N.C. App. at 278–83 (Jackson, J., concurring in part and dissenting in part). Neither the majority nor the dissent below clarify whether they were analyzing the gross negligence claim as it applied to the individual capacity claims or the official capacity claims or both. At oral argument in this Court, the Estate's Counsel represented that the only claim on appeal is the claim against the City based on its alleged waiver of governmental immunity by securing insurance.

Because the Estate does not appeal it, we do not reach the question of whether the evidence taken in the light most favorable to the Estate raises a genuine issue of material fact on Officer Lambert's gross negligence as it relates to the individual capacity claim.

## I.    Background

### A. The Accident

On 24 July 2018, Officer Lambert was on-duty as an officer with the City of Fayetteville Police Department. It was his first night shift. In fact, it was his first solo shift since joining the force the October before.

At 11:53 PM, Officer Lambert was one of three officers dispatched to a domestic disturbance. Of the officers, Officer Lambert was the farthest away and was thus providing backup. In his own words, he was "responding to a call for service," not "an emergency."

When he received the call, Officer Lambert was driving his police cruiser on Raeford Road—a flat multi-lane straightaway with no curves. He was traveling west in the middle lane. That night, the traffic was light, the weather clear, and the road well-lit by streetlights and nearby businesses. After receiving the call, Officer Lambert used the laptop in the front seat of his cruiser to find the address. He continued touching the computer's track pad as he drove.

At the same time, Gregory Graham was crossing Raeford Road on foot. Earlier that day, Mr. Graham was admitted to Roxie Care Center for suicidal ideations. At

one point, he voiced thoughts of "throwing himself into traffic." Mr. Graham received medical treatment and was released later that same day. As he traversed Raeford Road that evening, Mr. Graham's blood alcohol content was 0.31.

There was no pedestrian crosswalk on that portion of the street, but camera footage showed that it was well lit by the floodlights of a car dealership. The same footage captured Mr. Graham crossing three eastbound lanes and stopping on the median. He looked both ways, and then started across the westbound lanes.

Raeford Road has a speed limit of 45 miles per hour. Officer Lambert, however, drove faster, at one point reaching 58 miles per hour. His cruiser's blue lights were off and its emergency siren quiet. As he drove, Officer Lambert periodically looked at and touched his laptop. And in the moments before the crash, his cruiser twice strayed outside of its lane. Three seconds before impact, Officer Lambert shifted positions and leaned towards his laptop.

At 11:53 PM, Officer Lambert struck Mr. Graham head-on. He was driving 53 miles per hour, and his body camera footage did not capture any obvious efforts to brake or swerve. There were no skid marks on the road. After colliding with Mr. Graham, Officer Lambert pulled over, activated his blue lights, and alerted dispatch. Mr. Graham died at the scene.

## B. The Lawsuit

On 13 June 2019, almost a year after Mr. Graham's death, his Estate sued the Police Department, the City, and Officer Lambert in his individual and official

capacities. The Estate alleged wrongful death, negligence, and gross negligence. On the latter claim, the Estate invoked N.C.G.S. § 20-145, arguing that Officer Lambert's driving was grossly negligent and above the posted speed limits.

On 19 August 2019, defendants answered the Estate's complaint. They moved to dismiss the Police Department as an improper party. They raised defenses of governmental and public officer immunity. And they moved to dismiss the Estate's complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim. In defendants' view, the Estate did not specifically allege that the City waived governmental immunity by buying liability insurance.

In March 2020, defendants moved for summary judgment. Officer Lambert and the City reasserted their immunity defenses and argued that "no evidence" showed that the officer "acted in a . . . grossly negligent manner." The Police Department contended that, as a subunit of the City, it was not a proper party to the suit.

The trial court agreed with the Police Department and dismissed the Estate's claims against it with prejudice. But it denied summary judgment for Officer Lambert and the City, concluding that "genuine issues of material fact" remained. Officer Lambert and the City appealed the trial court's summary judgment ruling.

## C. The Appeal

A divided panel of the Court of Appeals reversed the trial court's summary judgment ruling and granted summary judgment to the City and Officer Lambert. *Est. of Graham*, 282 N.C. App. at 278. The court first held that the Estate sufficiently

plead a waiver of governmental immunity. *Id.* at 274. Under N.C.G.S. § 160A-485, cities may waive their immunity from tort claims by buying liability insurance. According to the Court of Appeals, the Estate's complaint was "sufficient to give notice to defendants that plaintiff is alleging a waiver of immunity because it states the action is brought and that defendants are liable pursuant to § 160A-485." *Id.* Since the Estate adequately plead waiver, the court reasoned that "governmental immunity was waived." *Id.*

Next, the Court of Appeals examined the individual capacity suit against Officer Lambert. Though governmental immunity attaches to governments and their employees when sued in their official capacities, public officer immunity governs personal liability. *Id.* (citing *Smith v. State*, 289 N.C. 303, 331 (1976)). Under that doctrine, an officer is immune from suit for acts within the scope of his duties, so long as they are devoid of malice or corruption. *See id.* Applying that standard, the court determined that Officer Lambert "was responding to an incident within the scope of his duties at the time of the accident." *Id.* And in discharging his official responsibilities, the officer's "conduct was neither malicious nor corrupt." *Id.* For those reasons, the court concluded that public officer immunity protected Officer Lambert from the Estate's individual capacity suit. *Id.* at 275. It thus awarded summary judgment on that claim. *Id.*

Finally, the court considered whether Office Lambert was grossly negligent in violation of section 20-145. In the court's view, Officer Lambert's "acts of

discretion . . . may have been negligent but were not grossly negligent." *Id.* at 277. Because he was responding to a domestic disturbance, the officer had a "valid and lawful" reason "for driving at a speed above the speed limit." *Id.* at 276. The court acknowledged that Officer Lambert "slightly deviated" from his lane twice before the collision, "look[ed] at his laptop" while driving, "touch[ed] the laptop's trackpad," and failed to activate his blue lights or emergency siren as required by Police Department policy. *Id.* at 277. But it emphasized that when courts have found a genuine dispute as to gross negligence, the officer's conduct was "more egregious" than Officer Lambert's. *See id.* (citing *Truhan v. Walston*, 235 N.C. App. 406, 413 (2014)). Relying on that precedent, the court discerned no "genuine issue of material fact as to gross negligence" and so granted summary judgment for Officer Lambert and the City. *Id.* at 278.

Judge Jackson dissented on the issue of gross negligence. In his view, the evidence—taken in the Estate's favor—"presents a genuine issue of material fact regarding whether Officer Lambert was grossly negligent when he struck and killed Mr. Graham." *Id.* at 280 (Jackson, J., concurring in part and dissenting in part). Judge Jackson noted that "the accident occurred on Officer Lambert's first night shift, and first day working alone." *Id.* at 282. Before the incident, Officer Lambert was "speeding, his blue lights and siren were not activated (in violation of Department policy), and the location of his collision with Mr. Graham was well-lit despite the late hour." *Id.* In the seconds before the collision, Officer Lambert was "using his computer

to find an address." *Id.* at 283. Further evidence suggested that his distraction seeped into his driving—he "committed two lane violations because he was looking at his computer instead of the road ahead of him" and "leaned distinctively towards his computer three seconds before" impact. *Id.* Officer Lambert "collided with Mr. Graham without attempting to avoid Mr. Graham by turning or applying the cruiser's brakes to slow his vehicle down." *Id.* Judge Jackson explained that the "evidence, if believed by a jury, tended to show a high probability of injury to the public despite the absence of significant countervailing law enforcement benefits." *Id.* at 282 (cleaned up). For that reason, Judge Jackson would let the Estate present its case for a jury "to determine whether Officer Lambert was grossly negligent on 24 July 2018— a task to which we are ill-suited as an appellate court." *Id.*

Before this Court, the Estate filed a notice of appeal based on Judge Jackson's dissent. The City and Officer Lambert also filed a petition for discretionary review, arguing that the Estate's complaint did not sufficiently allege waiver of governmental immunity. We allowed the petition for discretionary review.

## II. Standard of Review

We review summary judgment orders de novo. *See Builders Mut. Ins. Co. v. N. Main Constr.*, 361 N.C. 85, 88 (2006) (citing *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470 (2004)). Under that standard, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. Of Educ.*, 363 N.C. 334, 337 (2009) (cleaned up).

Summary judgment is proper only if (1) "there is no genuine issue as to any material fact," and (2) "any party is entitled to a judgment as a matter of law." *Belmont Ass'n v. Farwig*, 381 N.C. 306, 310 (2022) (cleaned up). The movant's "papers are carefully scrutinized" while the other party's "are indulgently regarded." *Caldwell v. Deese*, 288 N.C. 375, 378 (1975) (cleaned up); *accord Singleton v. Stewart*, 280 N.C. 460 (1972). Put differently, a court must credit "[a]ll facts asserted by the adverse party" and draw any inferences in its favor. *Dobson v. Harris*, 352 N.C. 77, 83 (2000) (cleaned up).

Still, summary judgment is strong medicine and "should be used with caution." *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 402 (1979); *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 534 (1971). Courts must tread gingerly at summary judgment, reserving it for cases where "only questions of law are involved and a fatal weakness in the claim of a party is exposed." *Bartley v. City of High Point*, 381 N.C. 287, 299 (2022) (cleaned up). In that vein, summary judgment is proper if an "affirmative defense" bars "an essential element of the opposing party's claim." *Craig*, 363 N.C. at 337 (cleaned up).

That principle applies to immunity. As this Court has explained, immunity is "more than a mere affirmative defense" to liability—it "shields a defendant entirely from having to answer for" its conduct "in a civil suit for damages." *See id.* (discussing governmental immunity); *see also Dawes v. Nash County*, 357 N.C. 442, 444–45 (2003) (sovereign immunity); *Bartley*, 381 N.C. at 294 (public officer immunity). Thus,

a defendant entitled to immunity may seek summary judgment on a plaintiff's claims. *See Dobson*, 352 N.C. at 87 (awarding summary judgment to defendant and explaining that "plaintiff's claim against her for slander *per se* was barred" because the defendant's "compliance with the reporting statutes entitled her to immunity").

## III.    Immunity Doctrines

This case initially involved three claims against three defendants—the City, the Police Department, and Officer Lambert. Adding another layer, the Estate sued Officer Lambert in separate legal capacities, seeking relief from him as an individual and within his official role. Because this case presents interlocking immunities and overlapping claims, we start by clarifying the legal frameworks at play.

## A. Suits Against Local Governments

The "common law doctrine of sovereign immunity" bars suits against the State unless it "has consented or waived its immunity*." State ex rel. Stein v. Kinston Charter Acad.*, 379 N.C. 560, 570 (2021) (cleaned up). Cities, counties, and other localities are "recognizable units that collectively make up" the State and enjoy a slice of its sovereign power. *Dawes*, 357 N.C. at 445 (cleaned up). For that reason, a "portion of the State's sovereign immunity" trickles down "to local governments." *Wray v. City of Greensboro*, 370 N.C. 41, 47 (2017). That "more limited" protection—termed governmental immunity—shields "units of local government from suit for acts committed in their governmental capacity." *Providence Volunteer Fire Dep't, Inc. v. Town of Weddington*, 382 N.C. 199, 211–12 (2022) (cleaned up). By the same stroke,

a local government is not liable "for the negligence of its employees in the exercise of governmental functions." *Meyer v. Walls*, 347 N.C. 97, 104 (1997).

Though conceptually similar, sovereign and governmental immunity differ importantly. For one, they attach to different entities. Sovereign immunity embraces the State and its agencies—governmental immunity reaches local governments. *See id.* Likewise, the immunities "do not apply uniformly." *Evans v. Hous. Auth. of Raleigh*, 359 N.C. 50, 53 (2004). The State's sovereign immunity covers "both its governmental and proprietary functions." *Id.* But governmental immunity reaches "only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions." *Id.* So when a local government reaches "beyond its governmental and police powers," it lacks "the full protections of sovereign immunity which the State and its agencies enjoy." *Kinston Charter*, 379 N.C. at 571 (cleaned up).

But sovereign and governmental immunity do share a key feature: Both are waivable by clear statutory language. *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537–38 (1983). The State Tort Claims Act, for instance, "partially waived [the State's] sovereign immunity by consenting to direct suits brought as a result of negligent acts committed by its employees in the course of their employment." *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 383 N.C. 31, 45 (2022) (cleaned up). In the same vein, the legislature has allowed cities to waive "immunity from civil liability in tort" by buying liability insurance. N.C.G.S. § 160A-485(a) ("Any

city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance."). A similar regime applies to counties. N.C.G.S. § 153A-435 (2023).

To surmount a defense of governmental immunity, a plaintiff must first "state a cause of action" by alleging a waiver of that immunity. *See Wray*, 370 N.C. at 47 (cleaned up). To do so, the plaintiff must plead "facts that, if taken as true, are sufficient to establish a waiver of immunity." *Id.* at 48 (cleaned up). If the government seeks summary judgment on immunity grounds, it bears the "burden of clearly establishing the lack of any triable issue of fact by the record properly before the court." *See Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 469–70 (1979); *see also Craig*, 363 N.C. at 337. To prevail, the government must present a "forecast of evidence" showing that "an essential element" of the plaintiff's claim "would be barred by [the] affirmative defense" of governmental immunity. *Dobson*, 352 N.C. at 83. If the government carries its burden, the plaintiff in turn must "show that a genuine issue of material fact exists for trial or must provide an excuse for not doing so." *Lowe v. Bradford*, 305 N.C. 366, 369 (1982). To survive summary judgment, however, the plaintiff "need not *convince* the court that he would prevail on a triable issue of material fact but only that the issue *exists*." *Id.* at 370 (emphasis added); *accord Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 21 (1992) ("[I]t is not incumbent upon a plaintiff to present all the evidence available in his favor, but only that necessary to rebut the defendant's showing." (cleaned up)).

**B. Suits Against Government Officers**

When a plaintiff sues a government employee, the "identity of the real party in interest dictates what immunities may be available." *Est. of Long v. Fowler*, 378 N.C. 138, 143 n.3 (2021) (quoting *Lewis v. Clarke*, 581 U.S. 155, 163 (2017)). In most cases, courts look to the pleadings and the "capacity in which a plaintiff intends to hold a defendant liable." *Mullis v. Sechrest*, 347 N.C. 548, 554 (1998). But when distinguishing official and individual capacity suits, a "crucial question" is "the nature of the relief sought, not the nature of the act or omission alleged." *Meyer*, 347 N.C. at 110 (cleaned up). If "the remedy sought is truly against the sovereign," the suit "in fact is against the official's office and thus the sovereign itself." *Lewis*, 581 U.S. at 162.

Thus, when a plaintiff sues a government employee in his official capacity, the "real party in interest" is "the governmental entity, not the named official." *Hafer v. Melo*, 502 U.S. 21, 26 (1991). That is because the suit seeks "recovery from the entity of which the public servant defendant is an agent." *Meyer*, 347 N.C. at 110. Because "the relief sought is only nominally against the official," official capacity suits "represent only another way of pleading an action against" the government. *Lewis*, 581 U.S. at 162 (cleaned up). On every meaningful metric, it "is basically a suit against the official office" rather than the person who holds it. *Corum v. Univ. of N.C.*, 330 N.C. 761, 772 (1992). For that reason, state officers sued in their official capacity "assume the identity of the government that employs them." *Hafer*, 502 U.S. at 27.

And for the same reason, the "only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Moore v. City of Creedmor*, 345 N.C. 356, 367 (1996) (quoting *Hafer*, 502 U.S. at 25).

Thus in official capacity suits, a defendant acting within the scope of his duties and carrying out a government function enjoys "governmental immunity to the same extent as" his employer. *Mullis*, 347 N.C. at 551; *see also Harwood v. Johnson*, 326 N.C. 231, 238 (1990) ("A suit against defendants in their official capacities, as public officials or a public employee of the Parole Commission acting pursuant to its direction, is a suit against the State."). The same logic applies to waiver. Without its consent to suit, a government is immune, and so are its employees when sued in their official capacities for carrying out authorized, governmental functions. *See Harwood*, 326 N.C. at 238 (holding that plaintiff's "suit cannot be maintained against defendants in their official capacities" because the government employer "has not consented to being sued in this forum" for defendants' actions). But when a government surrenders its immunity, so does an official capacity defendant—and to the same degree as the principal. *Mullis*, 347 N.C. at 555 (noting that school board's insurance coverage waived "governmental immunity from suit for the first $1,000,000 in damages which may be awarded," and thus concluding that "defendant[,] . . . in his official capacity, is entitled to governmental immunity to that same extent").

An individual capacity suit, by contrast, "seeks recovery from the defendant directly." *Meyer*, 347 N.C. at 110. In a personal capacity claim, officers are "sued as

individuals," and held "personally liable for payment of any damages awarded." *Corum*, 330 N.C. at 772. For that reason, the "real party in interest is the individual, not the sovereign." *Lewis*, 581 U.S. at 163 (cleaned up). Thus, a defendant sued in his individual capacity does not enjoy sovereign or governmental immunity. *Est. of Long*, 376 N.C. at 139. That said, individual capacity defendants are not left unshielded—they may "assert personal immunity defenses." *Moore*, 345 N.C. at 368 (cleaned up).

Public officer immunity is one such personal defense. A "judicially created doctrine" steeped in prudential concerns, that immunity "shield[s] public officials from tort liability when those officials truly perform discretionary acts" within "the scope of their official duties." *Bartley*, 381 N.C. at 294. The doctrine has "two primary goals": promoting "fearless, vigorous, and effective administration of government policies," and dampening "trepidation about personal liability" that may deter competent people from taking office. *Id.* (cleaned up). And as the name suggests, public officer immunity is for public officers—i.e., people "charged with duties involving the exercise of some portion of the sovereign power." *Smith,* 289 N.C. at 333 (cleaned up). But the doctrine does not immunize conduct "at odds with the protections afforded by" it and that "underlie its utility." *Bartley*, 381 N.C. at 294. For that reason, an officer is immune only when he "lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption." *Smith*, 289 N.C. at 331.

## IV.   Application

We apply those immunity principles to the claims remaining in this case at this point, starting with the Estate's suit against the City.

**A. The Estate's Suit Against the City**

Governmental immunity shields the City "from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." *Meyer*, 347 N.C. at 104. Everyone agrees that Officer Lambert was acting within his official duties and performing a government function at the time of the collision. So the City is immune for its officer's torts, unless it waived that immunity.

The Estate raises two theories of waiver. It first contends that the City surrendered immunity by buying insurance. According to the Estate, the City is indemnified—and thus liable—for the injuries caused by Officer Lambert. The Estate also invokes section 20-145. That provision exempts a police officer from speed limits when "chas[ing] or apprehen[ding] . . . violators of the law," so long as he drives with "due regard for safety." N.C.G.S. § 20-145. But under the statute, an officer must answer for "the consequence[s] of a reckless disregard of the safety of others"—in other words, his gross negligence. *Id.*; *see also Young*, 343 N.C. at 462. Because Officer Lambert was speeding and arguably distracted by technology at the time of the accident, the Estate contends that he was grossly negligent. And since the officer violated section 20-145, the Estate maintains that the City—as his employer—is vicariously liable. In so many words, then, the Estate reads section 20-145 to waive the City's governmental immunity for its officers' grossly negligent driving.

The Estate's first theory was improperly resolved by the Court of Appeals. Its second theory fails as a matter of law.

### 1. *Did the City waive governmental immunity by buying insurance?*

By statute, cities may waive governmental immunity by securing liability insurance. *See* N.C.G.S. § 160A-485. And in the same statute, the legislature detailed the scope and mechanics of waiver-by-insurance. *See id.* If a city buys insurance, it surrenders immunity from a tort claim "to the extent that the city is insured against such claim pursuant to this section." N.C.G.S. § 160A-485(c).

In its complaint, the Estate explained that its suit was "brought against the Defendant City pursuant to N.C.G.S. § 160A-485" and that "Defendant City shall be held liable pursuant to . . . N.C.G.S. § 160A-485." *Est. of Graham v. Lambert*, 282 N.C. App. at 273 (alteration in original). The City, however, moved to dismiss the Estate's suit under Rule 12(b)(6). Invoking our precedent, the City attacked the complaint for failing to "state a claim upon which relief can be granted under *some* legal theory." *See Bridges v. Parrish*, 366 N.C. 539, 541 (2013) (quoting *Coley v. State*, 360 N.C. 493, 494–95 (2006)). More specifically, the motion faulted the Estate because it did not specifically allege that the City waived immunity by securing insurance. From the record, we cannot locate any ruling on the City's 12(b)(6) motion. We do know, however, that the trial court denied Officer Lambert and the City's later motion for summary judgment.

The parties contested—and the Court of Appeals considered—only the

summary judgment order, not the 12(b)(6) motion. But the court conflated the issues before it and commingled the applicable law. It first recited the 12(b)(6) standard: "[t]o state a claim against the municipality a plaintiff must allege waiver of immunity by the purchase of insurance." *Est. of Graham*, 282 N.C. App. at 273 (cleaned up). The court then applied that 12(b)(6) rubric to the pleadings. In its view, the Estate stated a claim against the City because its "complaint [wa]s sufficient to give notice to defendants that plaintiff [wa]s alleging a waiver of immunity." *Id.* at 274. On that basis, the court concluded that "governmental immunity was waived." *Id.* The problem with that analysis: The court resolved a summary judgment order using the Rule 12(b)(6) framework. That was error—the court did not consider the right question or apply the right standard.

In purpose and practice, Rule 12(b)(6) and summary judgment travel in discrete lanes. At the pleading stage, a 12(b)(6) motion tests the "the law of a claim, not the facts which support it." *Snyder v. Freeman*, 300 N.C. 204, 209 (1980) (quoting *White v. White*, 296 N.C. 661, 667 (1979)). At the dawn of the case, courts should not discard a complaint "unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103 (1970) (cleaned up). But summary judgment is a different tool with a different scope. It furnishes a "device to bring litigation" to a head when it "can be readily demonstrated that no material facts are in issue." *Kessing*, 278 N.C. at 533. To that end, summary judgment "pierce[s] the pleadings," and gives courts "a

preview or forecast of the proof of the parties in order to determine whether a jury trial is necessary." *Nasco Equip. Co. v. Mason*, 291 N.C. 145, 149 (1976) (cleaned up). While a 12(b)(6) motion probes the "legal sufficiency" of the pleadings, *Blue v. Bhiro*, 381 N.C. 1, 5 (2022), summary judgment "eliminate[s] formal trials where *only* questions of law are involved," *Kessing*, 278 N.C. at 534 (emphasis added). And while a 12(b)(6) motion is "decided on the pleadings alone," *id.* at 533, summary judgment "embraces more than the pleadings," allowing courts to "consider affidavits, depositions, and other information," *Shoffner Indus., Inc. v. W.B. Lloyd Constr. Co.*, 42 N.C. App. 259, 262 (1979).

Because Rule 12(b)(6) and summary judgment pose different questions and draw from different sources, they require different standards. But here, the Court of Appeals misapprehend the issue before it and the framework at play. Because the parties only appealed the summary judgment order, the court should have asked whether the evidence raised a genuine factual dispute on the existence and extent of the City's waiver-by-insurance. But the court instead applied the Rule 12(b)(6) rubric, focusing on the sufficiency of the Estate's complaint. It held that the Estate adequately plead waiver, and so the City's "governmental immunity was waived." *Est. of Graham*, 282 N.C. App. at 274. But even if a complaint survives a 12(b)(6) motion, it is not guaranteed victory at summary judgment. After all, a plaintiff may state a claim for relief, but fail to show a "genuine factual controversy" for a jury to resolve. *See Nasco*, 291 N.C. at 149–50 (cleaned up). Significantly here, at summary

judgment the City submitted affidavit testimony that it has not purchased liability insurance that covers this incident.

By asking whether the Estate sufficiently alleged waiver—the standard under Rule 12(b)(6)—the Court of Appeals improperly resolved the summary judgment order before it. We thus vacate its decision on the City's immunity and remand for the proper analysis. The court should ask whether—viewing the evidence in the light most favorable to the Estate and considering the City's offer of proof that no liability insurance exists—the Estate has offered sufficient evidence to raise a genuine factual dispute as to the City's waiver of immunity, including whether the terms of any existing insurance policy cover this incident.

### 2. *Does section 20-145 waive the City's governmental immunity?*

Though the General Assembly may waive a city's governmental immunity, it must do so clearly. *Guthrie*, 307 N.C. at 537–38. Put differently, the legislature must make plain its intent to withdraw the "sovereign attributes of immunity." *Orange County v. Heath*, 282 N.C. 292, 296 (1972). For that reason, immunity statutes are "strictly construed" and waiver is not "lightly inferred." *Guthrie*, 307 N.C. at 537–38.

Under that approach, section 20-145 does not plainly waive the City's governmental immunity. By its terms, the statute contemplates personal liability: It holds "the *driver*" of a listed car responsible for "the consequence of a reckless disregard of the safety of others." *See* N.C.G.S. § 20-145 (emphasis added). Because the statute focuses on individual drivers and their individual actions, it lacks a key

ingredient for waiver: Clear language withdrawing immunity from a discrete government body. Under our precedent, statutes waiving immunity have specified what they were doing, how they were doing it, and to whom they applied. *See, e.g., Evans*, 359 N.C. at 56–57 (holding that "a Chapter 157 housing authority has statutory authority to accept liability for its governmental functions by the purchase of insurance" because the legislature authorized it "to sue and be sued" and "to insure or provide for the insurance of the property or operations of the authority against such risks as the authority may deem advisable" (cleaned up)); *N.C. Ins. Guar. Ass'n v. Bd. of Trs.*, 364 N.C. 102, 112 (2010) (concluding that the General Assembly clearly waived the State's sovereign immunity by applying the Workers' Compensation Act to claims brought by governmental employees); *see also* N.C.G.S. § 160A-485 (allowing cities to waive tort immunity by buying insurance); N.C.G.S. § 153A-435 (same for counties).

But section 20-145, by contrast, says nothing about governmental immunity and still less about waiver. Also telling, the statute reaches beyond government employees, extending coverage to private ambulances "when traveling in emergencies." *See* N.C.G.S. § 20-145. We think it implausible that section 20-145 was intended to waive governmental immunity without saying so and while applying to non-governmental actors. Because section 20-145 is not a "direct," "positive," or "clear waiver by the lawmaking body," it does not expose municipalities to liability when their agents breach its terms. *Orange County*, 282 N.C. at 296. For that reason, the

City's governmental immunity remains intact against the Estate's gross negligence claims unless otherwise waived by the purchase of liability insurance.

Section 20-145 fastens responsibility to individual drivers for their individual acts and therefore applies to individual capacity suits. *See Young*, 343 N.C. at 462. For those claims, gross negligence is the standard. *See Parish v. Hill*, 350 N.C. 231, 238 (1999) ("[A]s the law stands currently, in *any* civil action resulting from the vehicular pursuit of a law violator, the gross negligence standard applies in determining the officer's liability."). In those narrow circumstances, personal liability attaches to "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *See Bullins v. Schmidt*, 322 N.C. 580, 583 (1988) (explaining that section 20-145 "establishes as the public policy of North Carolina that if an officer's conduct" is "determined to be grossly negligent, then the statute does not protect him and he may be liable for damages proximately resulting from such gross negligence"). But without the plain legislative mandate needed to withdraw governmental immunity, section 20-145 does not provide a vehicle for the Estate's claim against the City.

## B. The Estate's Official Capacity Suit Against Officer Lambert

Sued in his official capacity, Officer Lambert is "entitled to governmental immunity to the same extent as" the City. *Mullis*, 347 N.C. at 551. Because the official capacity claim against Officer Lambert is "merely another way of bringing suit against the City," both claims entail the same analysis and the same result. *See*

*Moore*, 345 N.C. at 367. Since the City's immunity hinges on its insurance coverage, the official capacity suit against Officer Lambert does as well. On remand, the court should treat the official capacity suit against Officer Lambert as merged with the claim against the City.

## V.    Conclusion

As to the City, we reverse the Court of Appeals' ruling on whether the City waived governmental immunity and remand to that court for application of the proper summary judgment standard. Because the official capacity suit against Officer Lambert in this case is simply another way of suing the City, the immunity analysis is the same. As noted above, the Estate has abandoned its individual capacity suit against Officer Lambert. The case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

REVERSED AND REMANDED.